IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

DEC 29 2010

COURT OF APPEALS
DIVISION TWO

| | |
|---|---|
| THE STATE OF ARIZONA, ) | |
| ) | |
| Appellee, ) | 2 CA-CR 2010-0193 |
| ) | DEPARTMENT B |
| v. ) | |
| ) | O P I N I O N |
| HESAM MOHAJERIN, ) | |
| ) | |
| Appellant. ) | |
| ) | |

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. S1100CR200600888

Honorable Boyd T. Johnson, Judge

AFFIRMED

James P. Walsh, Pinal County Attorney
 By E. Lorenzo Jones and Gregory Hazard                                    Florence
                                                      Attorneys for Appellee

The Anderson Law Firm, PLC
 By Carl R. Anderson                                                       Glendale
                                                       Attorney for Appellant

E C K E R S T R O M, Judge.

¶1      Hesam Mohajerin appeals the trial court's order denying his petition for an entry of clearance upon his official records pursuant to A.R.S. § 13-4051. In ruling on the petition, the court interpreted this statute and *State v. Franco*, 153 Ariz. 424, 737 P.2d 400 (App. 1987), to require petitioners to prove that the charge or arrest they wish to have cleared was "unlawful or illegal" when it occurred. We acknowledge *Franco* supports this approach but clarify that (1) an unlawful or illegal arrest or charge is a potential ground for relief under § 13-4051, but not a necessary one, and (2) the statute is not focused exclusively on the time of an arrest or charge. We hold that in order to obtain relief, a petitioner must demonstrate both that his arrest or charge was "wrongful" and that justice requires the entry of a notation of clearance, and one of the ways he may do so is by showing the allegations against him are false. Although the trial court applied an incorrect legal standard in ruling on the petition here, we nevertheless affirm the court's ruling because Mohajerin was not entitled to relief under any reasonable view of the record.

**Factual and Procedural Background**

¶2      Mohajerin was charged with sexual assault and threatening or intimidating based on a report his wife, A., had made to police in May 2006. A forensic examination revealed A. had vaginal injuries and bruises on her body. It also revealed other physical evidence consistent with her allegations that she had been battered and sexually assaulted by her husband. After Mohajerin was arrested and charged by indictment, A. recanted

2

her allegations.[1] The charges were dismissed without prejudice in November 2006 on the state's motion.

¶3        In March 2010, Mohajerin filed a petition for relief pursuant to § 13-4051.[2] At the evidentiary hearing held the following month, A. testified she was confused about the sexual encounter she had had with Mohajerin but she "didn't feel that [he] was at fault at all." A. testified that she was "seriously mentally ill," having been diagnosed with "bipolar [disorder], attention-deficit disorder, T[o]urret[te']s Syndrome, [obsessive-compulsive disorder], . . . [and] depression." She explained that when she made her report, she had recently stopped taking the medications she normally took to manage these illnesses because she was pregnant. As a result, she had become paranoid, delusional, severely depressed, and easily agitated. This in turn led her to make what she believed were inaccurate statements about the incident. A. also testified, without dispute from the state, that the detective who had arrested Mohajerin had made sexual advances

[1]Although A. testified she believed she first informed "somebody" that her report was inaccurate a week after Mohajerin was arrested, there is no evidence she disclosed this information to any state official at this time. As the state correctly points out, A. filled out a victim impact statement on May 29, two weeks after Mohajerin's arrest and four days after his indictment, reiterating the allegations supporting his charges.

[2]Mohajerin had originally filed a pro se "Petition for Expungement of Arrest [R]ecord" in 2007, which the trial court denied due to a lack of legal authority. Two years later, Mohajerin's counsel filed a "motion to seal arrest record," which the court granted. That order was set aside, however, when the court later determined that notice had not been properly given to the state. In March 2010, counsel for Mohajerin filed a "motion to seal arrest and criminal record" under § 13-4051, the denial of which is the subject of this appeal. For the sake of precision, we construe and refer to this filing as a "petition," as the statute provides.

toward her on the night she reported the incident and that the same detective later maintained a sexual relationship with her while the case against Mohajerin was pending.

¶4 At the hearing, A. acknowledged making her previous statements to police that Mohajerin had punched her, threatened her life, and forced himself on her sexually. A. also testified she believed she had been sexually assaulted on the day she made her report. In response to Mohajerin's questions, A. denied that the injuries she received were the result of normal sex with her husband. Furthermore, when asked if she was responding to her husband's sexual advances and going along with the act, she said she had done so "silently," meaning, "I had said no but then I had said—but then I gave—I didn't push him away like someone who was being assaulted." When the trial court asked her to clarify whether the encounter had been consensual, the following exchange occurred:

> [A.:] I'm not saying it was consensual. What I'm saying is that I think with the problems that I was having mentally, what I envisioned that was happening, as I said, it was silent for me, it was all within my head, that I acted very—or that I thought very erratically and I was in like a phobia, almost like. I felt very fearful but didn't cry out, if that makes sense.

> [THE COURT:] But are you telling me that it was not consensual at that time?

> [A.:] It was consensual because I didn't react as a normal rape victim would and that's why, when I had an abortion and I got my hormones back to normal and then my medication, I thought to myself, this man didn't even think he was hurting me.

4

Upon further questioning from the court, A. testified that she had told Mohajerin she did not want to have sex before the encounter, but she felt she had to do it and therefore silently went along with it.

¶5        The trial court denied the petition, finding A.'s initial allegations to police had been corroborated by physical evidence, the arrest and charges had been supported by probable cause when they were made, and neither the arrest nor the charges had been "unlawful or illegal under the circumstances known to the State in May, 2006." This appeal followed.

### Jurisdiction

¶6        Arizona courts have previously assumed jurisdiction over both appeals and special actions arising under what is now § 13-4051 without any discussion of their basis for doing so. *See, e.g.*, *Beasley v. Glenn*, 110 Ariz. 438, 438-39, 520 P.2d 310, 311-12 (1974) (reviewing special action "brought to test a judgment" of superior court); *State v. Franco*, 153 Ariz. 424, 425, 737 P.2d 400, 401 (App. 1987) (reviewing superior court's order on state's appeal). We consider the issue *sua sponte* because we have an independent duty to review our own jurisdiction. *See State v. Bejarano*, 219 Ariz. 518, ¶ 2, 200 P.3d 1015, 1016 (App. 2008). Unless a case raises and addresses the issue of jurisdiction, it does not stand as authority for the existence of jurisdiction. *Bedard v. Gonzales*, 120 Ariz. 19, 20 n.1, 583 P.2d 906, 907 n.1 (1978); *Berry v. Superior Court*, 163 Ariz. 507, 508, 788 P.2d 1258, 1259 (App. 1989); *Pace v. Pace*, 128 Ariz. 455, 457, 626 P.2d 619, 621 (App. 1981).

¶7 Although § 13-4051 is part of Arizona's criminal code, a petition filed pursuant to this statute initiates a special proceeding that is in the nature of a civil action. The statute does not require formal criminal proceedings before a person may seek relief under its terms; based on the plain language of the statute, a person may do so if he or she merely has been arrested. § 13-4051(A). Thus, A.R.S. §§ 13-4032 and 13-4033, the statutes authorizing and limiting appeals in criminal cases, do not apply.

¶8 Section 12-2101(B), A.R.S., generally authorizes appeals "[f]rom a final judgment entered in an action or special proceeding commenced in a superior court." Because § 13-4051 creates such a special proceeding, we have jurisdiction of this appeal pursuant to article VI, § 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and 12-2101(B).

**Discussion**

¶9 Mohajerin contends the trial court abused its discretion because it applied an incorrect legal standard when ruling on his motion and it did not fully evaluate the evidence presented at the hearing. Mohajerin specifically contends the evidence demonstrated his arrest and indictment were wrongful insofar as they were based on false accusations—or, as he put it below, they were based on "a crime that never happened." Section 13-4051, A.R.S., provides as follows:

> A. Any person who is wrongfully arrested, indicted or otherwise charged for any crime may petition the superior court for entry upon all court records, police records and any other records of any other agency relating to such arrest or indictment a notation that the person has been cleared.

6

B. After a hearing on the petition, if the judge believes that justice will be served by such entry, the judge shall issue the order requiring the entry that the person has been cleared on such records, with accompanying justification therefor, and shall cause a copy of such order to be delivered to all law enforcement agencies and courts. The order shall further require that all law enforcement agencies and courts shall not release copies of such records to any person except upon order of the court.

C. Any person who has notice of such order and fails to comply with the court order issued pursuant to this section shall be liable to the person for damages from such failure.

¶10 When interpreting a statute, we must ascertain and give effect to the intent of the legislature, and the best indicator of that intent is the statute's language. *State v. Hinden*, 224 Ariz. 508, ¶ 9, 233 P.3d 621, 623 (App. 2010); *State v. Young*, 223 Ariz. 447, ¶ 19, 224 P.3d 944, 948 (App. 2010). If a statute's language is clear, we follow it without employing other means of interpretation. *Young*, 223 Ariz. 447, ¶ 19, 224 P.3d at 948. If the language is subject to more than one interpretation, however, "we determine legislative intent by reading the statute as a whole, giving meaningful operation to all of its provisions, and by considering factors such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). We review a court's interpretation of a statute de novo. *Id.*

¶11 Here we must determine the legislature's intent when it provided a potential remedy for those persons "wrongfully arrested, indicted or otherwise charged." § 13-4051(A). Preliminarily, we note that the word "wrongful" has two possible meanings. In its broader sense it means "[c]haracterized by unfairness or injustice," while in its

7

narrower sense it means "[c]ontrary to the law; unlawful." *Black's Law Dictionary* 1644 (8th ed. 2004); *accord Webster's Third New Int'l Dictionary* 2642 (1971).

¶12        Our review of other statutes in the criminal code suggests, in the context of § 13-4051, that the legislature did not intend to restrict the word "wrongfully" to its narrower meaning. The legislature has used the term "unlawful" or "illegal" in numerous other contexts in title 13, including when modifying the term "arrest." *See, e.g.*, A.R.S. § 13-404(B)(2) (specifying physical force not justified against peace officer making arrest, regardless of "whether the arrest is lawful or unlawful"), § 13-1303 (defining offense of "unlawful imprisonment" and providing defenses thereto), § 13-3833 (requiring hearing before magistrate to determine whether arrest by foreign officer in Arizona "unlawful"), § 13-3834 (noting statute concerning close-pursuit arrests by foreign officers "shall not be construed to make unlawful any arrest in this state which would otherwise be lawful"), § 13-4140 (allowing habeas corpus petition for person "illegally held in custody, confinement or restraint" and authorizing warrant for apprehension of party "charged with such illegal detention and restraint"); *cf.* A.R.S. § 13-1805(D) (using terms "unlawful imprisonment" and "wrongful detention" in same statute), § 13-4904(B) (same). We assume that if the legislature had intended to predicate the remedies set forth in § 13-4051 exclusively on a showing of unlawful or illegal conduct by law enforcement officials, it would have used language saying precisely that. That the legislature instead chose to use the term "wrongfully" in § 13-4051(A) suggests the legislature intended the word to connote its more expansive meaning.

8

¶13 Reading the provisions of § 13-4051 together reinforces that the legislature intended to use the term "wrongfully" in its broader sense in subsection (A). Notably, § 13-4051(B) requires a judge to enter a notation that a wrongfully arrested or charged person has been cleared of criminal allegations only "if the judge believes that justice will be served." We think such an expressly broad standard for granting relief as set forth in subsection (B) is facially incongruous with a narrow understanding of a "wrongful[]" arrest or charge, subsection (A)'s threshold for qualifying for such relief. Moreover, by requiring the entry of clearance to be based on considerations of "justice," the legislature underscored that its purpose in enacting the statute was to remedy unfairness or injustice, *see Black's Law Dictionary* 1644, and that it therefore intended the term "wrongfully" to carry its broader meaning. The statute also requires the trial court to specify in the order the "justification" for granting relief. § 13-4051(B). We find it unlikely the legislature would have taken the uncommon step of requiring courts to specify the basis for granting relief if the unlawfulness of the arrest or charge was the sole ground for relief.

¶14 We find no suggestion of a narrower standard in the legislative history of the statute. The express purpose of the current statute, which was formerly numbered as A.R.S. § 13-1761, was to "remov[e] . . . the names of persons wrongfully arrested or indicted from police and court records." 1973 Ariz. Sess. Laws, ch. 126, § 1. That general statement does not articulate any intention to limit relief to those arrests or charges arising from unlawful or illegal acts by law enforcement officials. And no language therein suggests any legislative intent to preclude petitioners from seeking relief for wrongful arrests or charges that were lawful when they occurred. For example, a

9

person misidentified and charged in a sexual assault case could later be fully exonerated by deoxyribonucleic acid (DNA) evidence; a person originally suspected of a crime could later be excluded as the perpetrator based on a third party's confession and subsequent conviction; or charges could be dismissed based on a discovery that the complaining witness fabricated the allegations and has pleaded guilty to falsely reporting those allegations to a law enforcement agency.[3] We think it unlikely the legislature would prohibit such obviously innocent persons from seeking the modest benefits of a clearance notation, yet make that remedy potentially available to culpable petitioners whose cases were dismissed due to technical illegalities in their arrests or charges.[4]

¶15 Indeed, the remedy set forth in § 13-4051 is itself instructive as to the statute's purpose. As noted, the statute allows the entry of a notation of clearance, and it limits the dissemination of a person's record thereafter. § 13-4051(A), (B). It does not authorize a person's criminal records to be expunged or hidden from law enforcement officials. *Beasley v. Glenn*, 110 Ariz. 438, 440, 520 P.2d 310, 312 (1974). This limited relief illustrates that the legislature was concerned with the "economic and personal harm result[ing] to an individual if even a baseless arrest becomes known to his employers,

___

[3]Section 12-771, A.R.S., which allows for a judicial determination of factual innocence, only applies when a person's identifying information has been stolen and his or her name has consequently been "[u]sed by another person who was arrested, cited or charged with a criminal offense" or "[e]ntered as of record in a judgment of guilt in a criminal case." § 12-771(A)(1), (2). This counterpart statute to § 13-4051 applies when the person seeking relief has not actually been arrested or charged, but the person's name nevertheless appears on official records stating to the contrary. Thus, § 12-771 would not apply to the aforementioned hypothetical situations.

[4]Of course, the trial court retains discretion under § 13-4051(B) to deny the latter class of petitioners relief in the interests of justice.

credit agencies, banks, or even his neighbors, notwithstanding the absence of a conviction." *Id.* at 439, 520 P.2d at 311. In short, § 13-4051 provides a remedy intended to benefit the person seeking relief. Unconstitutional police conduct may indeed support an argument that a person's arrest or charge was wrongful. *Cf. Beasley*, 110 Ariz. at 439, 520 P.2d at 311 (recognizing expungement as appropriate remedy for violation of rights). But the remedy set forth in § 13-4051 is manifestly not directed at punishing unlawful or illegal police conduct. *Cf. United States v. Leon*, 468 U.S. 897, 906, 916 (1984) (observing "the exclusionary rule is designed to deter police misconduct," not to provide a personal right).

¶16 Indeed, the statute does not allow a petitioner to seek damages for any past conduct by law enforcement that was unlawful or illegal. Rather, it authorizes damages only if officials fail to comply with a clearance order issued by the court. *See* § 13-4051(C). In all, these features of the statute suggest the legislature intended that it provide individuals with a mechanism for mitigating the damage done to their reputation by a wrongful arrest or charge, regardless of its exact cause. We are therefore skeptical that remedies therein would be available exclusively to those persons whose arrests or charges were wrongful only in the sense that law enforcement officers engaged in unlawful or illegal acts in arresting or charging them.

¶17 Our legislature has instructed us to construe statutes "liberally" so as "to effect their objects and to promote justice." A.R.S. § 1-211(B). The above analysis compels us to conclude that the word "wrongfully" as it appears in § 13-4051(A) must be

understood in its broader sense in order to promote justice and effectuate the stated purpose of the statute.

¶18 When reviewing a ruling on a § 13-4051 petition, we naturally defer to a trial court with respect to any factual findings it has made, given its superior position to assess the credibility of witnesses and resolve conflicts in the evidence. *See State v. Olquin*, 216 Ariz. 250, ¶ 10, 165 P.3d 228, 230 (App. 2007); *Goats v. A.J. Bayless Markets, Inc.*, 14 Ariz. App. 166, 168-69, 481 P.2d 536, 538-39 (1971). When a trial court predicates its decision on an incorrect legal standard, however, it commits an error of law and thereby abuses its discretion. *State v. Mangum*, 214 Ariz. 165, ¶ 6, 150 P.3d 252, 254 (App. 2007).

¶19 Here, the trial court incorrectly believed its inquiry was limited to an assessment of probable cause at the time the arrest was made and the charges were issued. As the court observed: "A.R.S. § 13-4051, and case law, do not focus on whether the criminal charges are subsequently dismissed or even found to have been baseless; the focus . . . is whether, when the charges were made and the defendant arrested, the criminal charges and the arrest were 'lawful.'" The court then denied the petition on the ground that probable cause existed for Mohajerin's arrest and charges, and the evidence he presented "d[id] not retroactively eliminate the probable cause that existed" when those events occurred. Although we have no basis for disturbing the court's conclusion that the arrest and charges were supported by probable cause at the time, our above analysis of the meaning of a wrongful arrest or charge demonstrates that

12

the trial court erred in failing to consider Mohajerin's arguments that he was falsely accused and actually innocent of the crimes with which he was charged.

¶20 The state defends the trial court's ruling on the ground that it correctly applied the standard set forth in *State v. Franco*, 153 Ariz. 424, 737 P.2d 400 (App. 1987). The underlying facts in that case were as follows:

> Franco was arrested on August 20, 1977, after a police officer stopped her in her vehicle. She was issued a citation for driving while intoxicated and, on September 1, 1977, she was also indicted on a charge of unlawful possession of marijuana. The arresting officer testified at the grand jury proceedings that he smelled the odor of alcohol on Franco's breath and the odor of marijuana when she opened her car door. Further search revealed a small quantity of marijuana in her possession.

*Id.* at 425, 737 P.2d at 401. Years later, Franco requested that the trial court enter a notation of clearance on the marijuana charge that had been dismissed pursuant to her plea agreement. *Id.* Apart from the fact that this felony charge had been dismissed, the only justification Franco offered to support her petition was that "the existence of the arrest and indictment on her record prevented her from enrolling in the Arizona Law Enforcement Officers' Training Program." *Id.* The state appealed the court's order granting the requested relief. *Id.*

¶21 The *Franco* court correctly held the petitioner had not demonstrated a legally sufficient ground for relief, noting "[n]o evidence was presented at the hearing on the petition" and "[t]here [wa]s no evidence that [Franco] was wrongfully arrested or that she was wrongfully indicted." *Id.* at 425-26, 737 P.2d at 401-02. Because the evidence suggested Franco had committed the offense and the proceedings against her had been

13

lawful, her arrest and charge were not wrongful in any sense. In deciding the issue before it, however, the *Franco* court further stated:

> We believe the legislature intended A.R.S. § 13-4051 to apply only in cases where the court finds that the petitioner was wrongfully charged with a crime in that either there was no legal basis for the arrest, or no legal or factual basis for the charge, or where the parties so stipulate.

153 Ariz. at 426, 737 P.2d at 402.[5]

¶22 Although we agree with *Franco* that relief is potentially available in such scenarios, we cannot agree, for the reasons we have articulated above, that the legislature intended the statute to apply exclusively to those circumstances. Indeed, *Franco* offered little analysis or support for this conclusion beyond the state's own assertion that the term "wrongfully" must mean "illegally" or "unlawfully." *Id.* at 425, 737 P.2d at 401. Furthermore, the *Franco* court conceded "the term 'wrongfully' may . . . mean 'unjustly,'" but it denied the petitioner relief under even this broader interpretation of the word, finding she had not been unjustly arrested or indicted. *Id.* at 426, 737 P.2d at 402.

¶23 Thus, the question that remains unaddressed here is whether Mohajerin presented sufficient evidence for the trial court to conclude his arrest and charges were

---

[5]A "factual basis" exists for a charge when there is sufficient evidence to support each element of the offense. *See State v. Richardson*, 175 Ariz. 336, 338, 857 P.2d 388, 390 (App. 1993). Rule 17.3, Ariz. R. Crim. P., requires a factual basis for a plea in order to avoid the possibility of an innocent defendant pleading guilty. *State v. Varela*, 120 Ariz. 596, 598, 587 P.2d 1173, 1175 (1978). A factual basis exists if there is strong evidence of a defendant's guilt; there need not be evidence beyond a reasonable doubt. *Id.* So even with a factual basis for a charge, a suspect may yet be innocent. *See Montgomery v. Sheldon*, 181 Ariz. 256, 889 P.2d 614, *supp. op.*, 182 Ariz. 118, 119 n.1, 893 P.2d 1281, 1282 n.1 (1995) (observing possibility exists for "wrongful conviction" due to "errors in the guilt determination of even pleading defendants").

14

wrongful because he was innocent. We conclude that although the court applied an incorrect legal standard in ruling on the petition, we nevertheless must affirm its judgment because it reached the correct legal result. *See State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984) ("We are obliged to affirm the trial court's ruling if the result was legally correct for any reason."). Ordinarily, a petitioner's factual innocence will be a question that depends heavily on a trial court's assessment of witness credibility and resolution of conflicting evidence.[6] Here, however, any determination that Mohajerin was factually innocent would be unsupported by and contrary to the record, even when viewing it in the light most favorable to Mohajerin's claims. Remanding the matter for reconsideration under the proper standard, therefore, is not required. *See SDR Assocs. v. ARG Enters., Inc.*, 170 Ariz. 1, 4, 821 P.2d 268, 271 (App. 1991) ("In reviewing sufficiency of the evidence, the trial court's findings of fact are binding on an appellate court unless they are clearly erroneous or unsupported by any credible evidence."); *see also State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, ¶ 14, 66 P.3d 70, 73 (App. 2003) ("An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent

---

[6]The mere fact that charges were dismissed, of course, does not itself prove the alleged crimes did not occur, just as an acquittal does not establish a defendant's innocence. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984) ("[A]n acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt."); *accord Pfeil v. Smith*, 183 Ariz. 63, 65, 900 P.2d 12, 14 (App. 1995). An alleged victim's recantation likewise does not automatically entitle a petitioner to relief under § 13-4051. *See State v. Krum*, 183 Ariz. 288, 294, 903 P.2d 596, 602 (1995) (observing "[c]ourts have long been skeptical of recanted testimony claims, even when . . . professed by the accuser in court").

evidence to support the decision."); *Files v. Bernal*, 200 Ariz. 64, ¶ 2, 22 P.3d 57, 58 (App. 2001) ("Generally, a court abuses its discretion where the record fails to provide substantial support for its decision . . . .").

¶24 Although A. suggested her initial reports to police were inaccurate, her testimony at the hearing did not recant the factual content of those reports in any relevant respect. She testified that she refused to have sex with Mohajerin but later ceased resisting because she felt she had to go along with it. And, she did not dispute her earlier statements to police officers that he had threatened and injured her. Rather than exonerating him, her testimony established all the elements necessary to prove a sexual assault pursuant to A.R.S. § 13-1406(A),[7] as well as threatening or intimidating under A.R.S. § 13-1202(A)(1).[8] Contrary to A.'s interpretation of the law, the lack of continued physical resistance on her part did not render the encounter consensual. *See* A.R.S. § 13-1401(5)(a) (specifying sexual act occurs "[w]ithout consent" when victim coerced by immediate or threatened use of force); *see also State v. Denton*, 101 Ariz. 455, 459, 420 P.2d 930, 934 (1966) ("A defendant remains guilty of rape though the woman yields for reasons other than the fact that she becomes aroused and consents."). And, although A.'s testimony at the hearing may have supported Mohajerin's claim that he lacked any

---

[7]This statute, which is the same in relevant part as it was at the time of the 2006 incident, provides: "A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person." *See* 1999 Ariz. Sess. Laws, ch. 92, § 1.

[8]Similarly, this statute is the same in relevant part as at the time of the incident and provides: "A person commits threatening or intimidating if the person threatens or intimidates by word or conduct . . . [t]o cause physical injury to another person . . . ." *See* 2003 Ariz. Sess. Laws, ch. 225, § 2.

16

awareness that he was hurting her, such awareness is not an element of either offense for which he seeks a clearance notation. In sum, even if the trial court accepted A.'s testimony as credible in every respect, that testimony would not provide support for the conclusion that Mohajerin was factually innocent of the charges.

¶25 In affirming the judgment, we address two additional contentions Mohajerin has raised on appeal. First, he suggests economic hardship should be a basis for relief because § 13-4051(B) makes an entry of clearance dependent upon considerations of justice. We reject this argument. As *Franco* demonstrates, limited employment opportunities are not a sufficient ground for relief under the statute. Wrongfulness is the threshold issue to be decided under § 13-4051.

¶26 Second, Mohajerin contends his arrest was wrongful or illegal due to the "nefarious ulterior motives" of one of the investigating detectives. In a related argument, he claims "government misconduct . . . infected [his] arrest" and denied him due process because the detective "caused to be initiated or continued . . . a criminal prosecution which lacked any probable cause." But our jurisprudence makes clear that improper law enforcement motivations do not, standing alone, render an arrest unlawful. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *accord State v. Spreitz*, 190 Ariz. 129, 144, 945 P.2d 1260, 1275 (1997). As those cases implicitly recognize, such motivations do not necessarily mean that the resulting arrest or charges are wrongful in the sense that the defendant is either unlawfully arrested or charged, or factually innocent. Considering the remedy § 13-4051 allows, as analyzed above, nothing in the statute or its history

17

suggests the legislature intended to prevent the dissemination of information about a person's lawful arrest or charge merely because officials may have had improper motives. *Cf. Lessman v. McCormick*, 591 F.2d 605, 607, 609, 610-11 (10th Cir. 1979) (finding plaintiff stated claim under 42 U.S.C. § 1983 when lawful arrest for overtime parking violation could have been misuse of power). Thus, although a petitioner seeking relief under § 13-4051 may certainly bring evidence of improper law enforcement motives to challenge an officer's credibility on a material fact, *see State v. Livingston*, 206 Ariz. 145, ¶ 13, 75 P.3d 1103, 1106 (App. 2003), no language in § 13-4051 entitles a petitioner to relief on such evidence standing alone.

¶27 Here, A. reported Mohajerin's alleged assault before the detective in question was involved in the case. The detective played no role in the subsequent medical exam that corroborated A.'s initial version of the events. Moreover, as discussed, A.'s testimony at the § 13-4051 hearing did not meaningfully recant her original reports provided before the detective's involvement. On the record before us, no reasonable fact-finder could conclude that the detective's misbehavior in the case demonstrated that Mohajerin's arrest and charges were themselves wrongful in any respect.

**Disposition**

¶28 For the foregoing reasons, the court's order denying relief under § 13-4051 is affirmed.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge

18

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge


/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge