NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

AARON LUDWIG, *Appellant*.

No. 1 CA-CR 16-0735
FILED 8-15-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-134384-001
The Honorable Richard L. Nothwehr, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Daniel P. Strange
*Counsel for Appellee*

Suzanne M. Dallimore, P.C., Tempe
By Suzanne M. Dallimore
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Chief Judge Samuel A. Thumma joined.

_____

**H O W E**, Judge:

**¶1**   Aaron Ludwig appeals the trial court's order denying his petition for an entry of clearance pursuant to A.R.S. § 13–4051 and his request to seal the record. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**   In January 2015, Ludwig resigned from his position as Chief Counsel of the Financial Remedies Section of the Arizona Attorney General's Office ("AGO"). In April 2015, Afficient Towing and Recovery towed a car that belonged to Ludwig's friend, S.H. That night, Ludwig researched the towing company, the applicable city ordinances pertaining to towing, and trial court records for Afficient and its owner B.J. Ludwig learned that Afficient could not require S.H. to pay for the tow before releasing her car.

**¶3**   The following day, Ludwig accompanied S.H. to Afficient's tow yard to assist in retrieving the car. Upon reaching the service counter, Ludwig introduced himself as the "immediate past chief" of the Financial Remedies Section of the AGO. Ludwig placed his research papers on the counter and removed his business card holder from his pocket. Clipped to the top of the business card holder was a Super Bowl commemorative badge baring the words "Arizona Attorney General" and "Asst. Attorney General" and the last three digits of Ludwig's old employee number. Ludwig removed the badge and placed it on the counter in front of Afficient's employee. Ludwig then presented his old AGO business card.

**¶4**   At this time, B.J. arrived to work and noticed Ludwig's badge on the service counter. Ludwig again introduced himself as the "immediate past chief" of the Financial Remedies Section of the AGO. B.J. invited Ludwig and S.H. into her office. Ludwig informed B.J. that the tow was unlawful under the city ordinances, that they were there to pick up the car, and that he had legal documents pertaining to Afficient's previous criminal

issues. Ludwig then handed B.J. the papers and his AGO business card. B.J. became upset with Ludwig and believed that he was harassing her. She then stated to S.H. that "all you needed to do was ask for your car . . . he didn't need to say anything." S.H. recovered her car without having to pay and they left.

¶5    After Ludwig and S.H. left, B.J. called the AGO to report Ludwig's conduct. B.J. stated that "agent" Ludwig used his "color of authority" to intimidate her into releasing the car, which she would have done upon request. The AGO assigned an agent to investigate. The agent interviewed B.J. and obtained a copy of the documents that Ludwig left at Afficient, including a copy of Ludwig's old AGO business card. The agent then completed a "release questionnaire" form that included a probable cause section that stated that Ludwig represented himself as an AGO employee to recover a towed car, and presented a badge and an old AGO business card to retrieve the car. Because Ludwig was a former chief in the AGO, the AGO sent a conflict memorandum and its entire investigative file to the Maricopa County Attorney's Office ("MCAO"). In the conflict memorandum, the AGO agent noted that Ludwig's case was opened for "information only" and recommended a charge for criminal impersonation under A.R.S. § 13–2006(A)(3).

¶6    Three months later, MCAO charged Ludwig with felony criminal impersonation under A.R.S. § 13–2006(A)(3). At Ludwig's attorney's request, MCAO interviewed Ludwig and in October 2015 dismissed the charge without prejudice. In April 2016, Ludwig petitioned for entry of clearance pursuant to A.R.S. § 13–4051 and requested the records sealed pursuant to Maricopa County Superior Court Local Rule ("Local Rule") 2.19(c). Three months later, at the evidentiary hearing on the petition for clearance, Ludwig moved for summary judgment, which the trial court denied.

¶7    At the evidentiary hearing, Ludwig testified that he introduced himself as the "immediate past chief" of the Financial Remedies Section of the AGO and that he always introduced himself like that because it acted as a concise resume and gave him instant credibility. Ludwig also testified that he used the commemorative badge on his business card holder and that he placed it on the counter along with his old AGO business card. Ludwig stated, however, that he did not mean to leave his old AGO business card with Afficient and instead meant to leave his current business card.

¶8            Ludwig also stated that he left the AGO on bad terms and that he resigned in lieu of being fired. Additionally, Ludwig testified that he believed that the AGO's investigative process did not follow the correct procedures and that the only reason the AGO investigated him was because of a personal animosity between him and the Criminal Division chief. A former assistant chief agent of the Special Investigations Section of the AGO testified that although investigations normally follow a specific process, a case that was classified as "information only" would be sent to a different agency to investigate and prosecute.

¶9            Ludwig testified further to the injustice that he suffered since being charged with a felony. As a former prosecutor, Ludwig stated that having to go to court as a defendant made him feel humiliated. Additionally, Ludwig worked as the managing director of the Counterracketeering Group and in that capacity, worked with law enforcement officers and prosecutors who could find out that he had a felony charge on his record.

¶10           The trial court denied the petition, finding that probable cause supported Ludwig's charge, Ludwig's testimony did not establish that he was factually innocent, and that "the evidence does not indicate that [Ludwig] was wrongfully arrested or charged." The court specifically noted that the alleged improper motive from the AGO did not make Ludwig's charge wrongful because MCAO did its own independent review before charging Ludwig. The trial court also found that based on Ludwig's actions, it "cannot find that justice would be served by an order to clear the records in this matter." The court further denied Ludwig's request to seal the record because he failed to show a compelling interest to do so. Ludwig timely appealed.

## DISCUSSION

### 1. Petition for Clearance and Request to Seal the Record

¶11           Ludwig argues that the trial court erred by denying his petition for clearance and his request to seal the record. Ludwig contends that he provided sufficient evidence to satisfy A.R.S. § 13–4051's requirements and that the trial court misinterpreted the relevant statutes. Ludwig specifically contends that the trial court looked only to whether probable cause existed in determining that he was not wrongfully charged and that his charge was the result of the AGO's improper investigation. We review a ruling on a petition for clearance under A.R.S. § 13–4051 for an abuse of discretion and defer to the trial court regarding any factual

findings, given its position to asses witness credibility and resolve any conflicts in the evidence. *See State v. Mohajerin*, 226 Ariz. 103, 108 ¶ 18 (App. 2010). Because Ludwig did not prove that the criminal impersonation charge was "wrongful" under the statute, the trial court did not abuse its discretion by denying his petition.

¶12 By statute, "[a]ny person who is wrongfully arrested, indicted or otherwise charged for any crime may petition the superior court for entry on all court records . . . and any other records of any other agency . . . a notation that the person has been cleared." A.R.S. § 13–4051(A). "After a hearing on the petition, if the judge believes that justice will be served by such entry, the judge shall issue the order requiring the entry that the person has been cleared on such records[.]" A.R.S. § 13–4051(B). As used in the statute, the term "wrongfully" is viewed in its broader sense as encompassing not only unlawful but also "unfairness or injustice." *Mohajerin*, 226 Ariz. at 107 ¶¶ 11–12. To succeed in a petition for clearance, a petitioner must prove both that his charge was "wrongful" and that justice requires an entry of a notation of clearance. *Id.* at 104 ¶ 1.

¶13 Here, the trial court correctly interpreted A.R.S. § 13–4051. This statute puts the burden of proof solely on Ludwig to prove the statute's elements. To determine whether a charge is "wrongful," the trial court is required to consider more than just whether probable cause existed at the time MCAO charged Ludwig. *Id.* at 109 ¶ 19. Before the trial court denied Ludwig's petition by finding that the evidence did not show that Ludwig was "wrongfully" charged, it specifically found that probable cause supported the charge and that Ludwig testimony did not establish that he was factually innocent. As such, Ludwig's contention that the trial court abused its discretion by determining that a probable cause finding alone was sufficient to deny his petition is unsupported by the record.

¶14 The record supports the trial court's finding that probable cause supported Ludwig's charge. MCAO charged Ludwig with criminal impersonation in violation of A.R.S. § 13–2006(A)(3). A person commits criminal impersonation by "[p]retending to be, or assuming a false identity of, an employee or a representative of some person or organization with the intent to induce another person to provide or allow access to property." A.R.S. § 13–2006(A)(3). When B.J. initially called the AGO she stated that "agent" Ludwig used his "color of authority" to intimidate her into releasing the car. B.J. sent a copy of Ludwig's old AGO business card to the investigative agent and explained that Ludwig displayed his badge to Afficient employees. The court found that during Ludwig's testimony he failed to establish that the charge was unsupported by probable cause. On

this record, we cannot say that the trial court abused its discretion by determining that probable cause supported the charge. *See State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30 ¶ 14 (App. 2003) ("An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision.").

¶15 The record also supports the trial court's finding that Ludwig was not factually innocent. To be innocent of criminal impersonation under A.R.S. § 13–2006(A)(3), Ludwig had to prove that he did not assume the false identity of an employee of an organization or that he did not intend to induce access to property. Ludwig failed to prove his innocence here. Ludwig went out of his way to show that he was affiliated with the AGO. Ludwig could have introduced himself as the managing director of the Counterracketeering Group or as an attorney. Even though Ludwig introduced himself as the "immediate *past* chief," pairing that with the presentation of the business card and the badge that contained Ludwig's old employee number and the words "Arizona Attorney General" and "Asst. Attorney General," whether Ludwig was still a lawyer at the AGO was ambiguous. Further, by Ludwig's own admission, he intended to induce B.J. into giving S.H. her car. Thus, the trial court did not err by finding that Ludwig failed to prove that he was factually innocent.

¶16 Ludwig counters that he could not be legally guilty of criminal impersonation under A.R.S. § 13–2006(A)(3) because Afficient had to provide S.H. her car. Ludwig contends that because the law required Afficient to provide S.H.'s car to her upon request, the fact that he might have impersonated a lawyer from the AGO was immaterial. But under the criminal impersonation statute's plain language, Ludwig needed to have only intended to induce B.J. into providing or allowing access to property. Because the statute's language is clear and unambiguous, "we apply it without resorting to other methods of statutory interpretation." *Haag v. Steinle*, 227 Ariz. 212, 214 ¶ 9 (App. 2011). Further, "'property' means anything of value, tangible or intangible." A.R.S. § 13–105(37). Ludwig admitted and the trial court found that Ludwig went to Afficient's tow yard with legal documents and AGO items to encourage and induce B.J. to release S.H.'s car. Therefore, Ludwig's contention that he could not be guilty of criminal impersonation because S.H. had a right to receive her car is without merit.

¶17 Ludwig next argues that he was wrongfully charged because the AGO did not follow the normal investigative procedures and that the investigation would have been dismissed had it not been for the personal

animosity between him and the Criminal Division chief. Here, the trial court found that any alleged improper motive did not make Ludwig's charge "wrongful" under the statute. The record supports the trial court's finding. Although the AGO submitted its investigative report to MCAO, the conflict memorandum stated that the case was opened as "information only." According to the former assistant chief agent who testified at trial, "information only" meant that the MCAO would conduct the investigation and the potential prosecution. Assuming that the AGO did not close the investigation for some improper motive, that alone would still not entitle Ludwig to relief under A.R.S. § 13–4051. *See Mohajerin*, 226 Ariz. at 111 ¶ 26. Additionally, the trial court found that MCAO conducted its own review, which negated any inference of improper motive of the AGO. Thus, the trial court did not err by finding that any alleged improper motive did not make Ludwig's charge "wrongful."

¶18            Accordingly, the trial court correctly considered whether Ludwig was "wrongfully" charged under its broad definition as *Mohajerin* requires. The court determined that: (1) probable cause supported Ludwig's charge, (2) Ludwig's testimony did not prove that he was factually innocent, and (3) that any alleged improper investigation did not warrant finding the charge "wrongful." Thus, the trial court did not abuse its discretion by denying Ludwig's petition for clearance.[1]

¶19            Next, Ludwig argues that the trial court erred by denying his request to seal the record. Under Local Rule 2.19(c), "the court may order the court files and records . . . to be sealed or redacted, provided the court makes and enters written findings that the specific sealing or redaction is justified by compelling interests that outweigh the public interest" in access to the records. Ariz. Local R. Prac. Super. Ct. (Maricopa) 2.19(c). The trial court found that Ludwig failed to show a compelling interest that outweighed the public's right to access. On appeal, Ludwig states that he showed "good cause" to seal the records. Even assuming that Ludwig showed good cause to seal the records, that would not be enough to satisfy the compelling interests standard that the rule requires. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) ("A good cause showing will not, without more, satisfy a compelling reasons test."). Accordingly, the trial court did not err by failing to find that Ludwig showed a compelling interest to seal the record.

---

[1]            Because Ludwig failed to prove that he was "wrongfully" charged, we need not address the trial court's finding that justice did not require entry of an order of clearance under A.R.S. § 13–4051(B).

### 2. Motion for Summary Judgment

**¶20**          Ludwig further argues that the trial court erred by denying his oral motion for summary judgment made at the beginning of the evidentiary hearing. Arizona Rule of Civil Procedure 56(b)(3) states that "[a] summary judgment motion may not be filed later than the dispositive motion deadline set by the court or local rule, or absent such a deadline, 90 days before the date set for trial." Petitions for clearance under A.R.S. § 13–4051 are civil in nature and as such must comport with the civil rules. *See Mohajerin*, 226 Ariz. at 106 ¶ 7. Because Ludwig did not move for summary judgment 90 days before the evidentiary hearing, his motion was untimely and the trial court did not err by denying it.

### CONCLUSION

**¶21**          For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA