752 P.2d 483

STATE of Arizona, Appellee,

v.

Preston BROUGHTON, Appellant.

No. CR–86–0062–AP.

Supreme Court of Arizona,
En Banc.

March 1, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Ronald L. Crismon, Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Stanfield & McCarville, P.C. by Thomas A. McCarville, Garye L. Vasquez, Gilberto V. Figueroa, Casa Grande, for appellant.

MOELLER, Justice.

## JURISDICTION

On June 18, 1984, defendant, Preston Broughton, was a prisoner at the Arizona State Prison serving a life sentence for murder and a twenty-one-year sentence for manslaughter. On that date, there was an altercation in the industrial yard of the central unit at the Arizona State Prison, resulting in the indictment of the defendant on two counts of dangerous or deadly assault by a prisoner. One count alleged that defendant assaulted prison guard Donald Hoefer; the other count alleged that he assaulted his fellow prisoner Floyd Evans. At trial, the court granted defendant's motion for a directed verdict on the Evans count. The jury convicted on the Hoefer count. Defendant was sentenced to a mandatory, consecutive life sentence pursuant to A.R.S. § 13–1206 as it existed at the time of the offense and now appeals. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and –4035. We affirm.

## FACTS

Defendant worked in the prison industrial yard where the inmates performed carpentry, metal fabrication and other craftwork. About 11:00 a.m. on June 18, 1984, the prisoners were dismissed from the yard for lunch. As they were leaving the yard, prisoner Floyd Evans allegedly called defendant a "punk," an appellation which, in prison parlance, has highly negative connotations. Defendant responded by attacking Evans with a long board about two inches thick.

Prison guard, Donald Hoefer, stepped in to break up the fight. According to Hoefer, defendant was incensed; his face was red and his teeth were clenched. Hoefer began to handcuff defendant but Hoefer's supervisor, who had not seen the fight, ordered Hoefer to guard Evans and let the defendant go to the cafeteria.

A moment later, Hoefer saw defendant, still wild-eyed and incensed, approach Evans holding a rusty utility knife blade. Hoefer stood his ground and defendant said, "Get out of my way, old man, or I'll cut you." Before Hoefer could react, defendant slashed at him. Although Hoefer felt a stinging sensation, he did not realize he had suffered a seven-inch stomach wound. Hoefer then knocked defendant to the ground.

Charles Newbold, a supervisor in the industrial yard, jumped on defendant and held him on the ground. The supervisor who had earlier ordered Hoefer not to handcuff defendant returned to the scene

and led defendant away to his cell. While going to the cell, defendant told the supervisor, "If that skinny motherfucker guard ever puts his hands on me again, I will kill him too."

Guards searched the area following the attack and found a utility knife blade. This blade was, and is, the subject of controversy. The blade, while similar to hundreds of other blades in the industrial yard, was the only one found in the immediate area of the fight. The state took the blade into custody, but performed no tests on it until almost a year and a half later. The tests, when made, used up the small amount of blood on the blade. The blood could not be identified as human blood. The tests revealed no identifiable fingerprints.

Sometime after the fight the state held disciplinary hearings directed against the defendant and Evans. Tapes of the hearings were made but were routinely destroyed after the hearings and before these criminal charges were filed.

At trial, the injured guard, Hoefer, gave a detailed, eyewitness account of the attack. He testified that defendant was the only prisoner to make physical contact with him during the fight. Newbold, the supervisor, testified that he saw defendant swipe at Hoefer and saw Hoefer quickly jump back. Newbold also observed an object in defendant's hand and a deep wound in Hoefer's stomach. Joseph Hammer, who worked for the duplicating services in the prison, saw Hoefer holding his abdomen and also saw Newbold restraining the highly agitated defendant. Hoefer, Newbold and Hammer all testified that Hoefer's stomach was deeply cut in the attack.

While defendant did not testify, three prisoners, including Evans, did. Not surprisingly, their testimony was guarded. Although none of them testified directly that defendant had attacked Hoefer, each prisoner's testimony was consistent with that of Hoefer. Each acknowledged that defendant, Evans and Hoefer were in the industrial yard outside the carpentry shop where both inmates worked at approximately 11:00 a.m. on June 18, 1984. Evans and a prisoner named Harjo acknowledged

that defendant and Evans interacted in some fashion at that time. Harjo and a prisoner named Tipton also testified that at that time defendant became so angry he had to be restrained. None of the three prisoners denied that defendant attacked Hoefer.

## PRE–INDICTMENT DELAY

Defendant was indicted on June 19, 1985, a year and a day after the attack on Hoefer. Defendant moved to dismiss the indictment based on pre-indictment delay. At a hearing on that motion, the state explained the reason for the delay. Tom Scott, the investigator originally responsible for the Department of Corrections investigation, became seriously ill less than one month after the June 18, 1984, attack on Hoefer. As a result, Scott was off work on July 10, 1984, again from July 16 through July 20, again on August 23 and 24, and finally, from September 4 through October 9 for brain surgery. His illness and subsequent surgery caused him to lose all memory of the case. As a result, the police reports were not turned over to the county attorney's office until April of 1985, approximately ten months after the crime occurred. The indictment followed within two months. The defendant challenges the trial court's denial of his motion to dismiss based on pre-indictment delay.

We note first that defendant does not allege, and has not sought to prove, any deliberate delay on the part of the state, the Department of Corrections or the county attorney. Defendant does, however, argue that his due process rights were violated by the one-year delay. He asserts two separate sources of alleged prejudice. First, he claims that the delay resulted in the destruction of the tapes of the prison disciplinary hearings. Second, he claims that because of the delay the knife blade was not tested until a year and a half after the incident. We conclude that neither claim justifies dismissal.

With regard to the unavailability of the tapes of the disciplinary proceedings, defense counsel stated:

Now we look at the prejudice that's involved in this case. The State's witnesses all wrote reports in regard to this case. The CSO and also the other personnel wrote reports. Even though they have a loss of memory, they have something to refresh their memory on.

I have spoken to inmates who were at the scene where the alleged offense occurred. Every one of them cannot remember what exactly occurred ... It was over a year and a half ago ... when this thing occurred ... Now just the fact that the state has, or state's witnesses have, reports which they can look at and refer back to, any of the witnesses that we would be presenting don't have these types of reports or details to refer back. That is a tactical advantage that the state has over the defense in the prosecution of this case.

[I]f there was [sic] any inconsistent statements in regard to what the State's witnesses would present at the time of trial, we no longer have those interviews or transcripts present. And, again, this is prejudice, I believe, in the defense of our case.

■ The due process clause plays only a limited role in evaluating pre-indictment delay. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752, 758 (1977). The primary guarantee against a stale prosecution is the statute of limitations. *State v. Van Arsdale*, 133 Ariz. 579, 653 P.2d 36 (App.1982). In this case, the statute of limitations is seven years. A.R.S. § 13–107(B)(1).

■ To establish that pre-indictment delay has denied a defendant due process, there must be a showing that the prosecution intentionally delayed proceedings to gain a tactical advantage over the defendant or to harass him, *and* that the defendant has actually been prejudiced by the delay. *State v. Hall*, 129 Ariz. 589, 633 P.2d 398 (1981); *State v. Torres*, 116 Ariz. 377, 569 P.2d 807 (1977); *State v. Marks*, 113 Ariz. 71, 546 P.2d 807 (1976). In *Hall*, we noted that a "stale investigation" in and of itself is not normally violative of due process rights:

[T]he facts [do not] establish that the delay was intended to gain a tactical advantage or to harass appellants. Instead, appellants argue only that it is unfair for the State to investigate and gather statements and evidence which they did not or could not do until their indictment; hence, they were afforded a "stale investigation." Such is clearly not constitutionally violative of due process.

129 Ariz. at 593, 633 P.2d at 402 (citations omitted).

In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the United States Supreme Court first noted that any pre-indictment delay unavoidably results in some degree of prejudice to defendant. "Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution." *Id.* at 324–25, 92 S.Ct. at 465, 30 L.Ed.2d at 481.

This statement in *Marion* foreshadowed the Court's holding six years later in *Lovasco*, wherein the Court rejected a defendant's claim that pre-indictment delay created prejudice justifying a reversal because defendant had lost the testimony of two material witnesses. The Court held that a court applying the due process clause to pre-indictment delay has "to determine only whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' and which define 'the community's sense of fair play and decency.'" *Lovasco*, 431 U.S. at 790, 97 S.Ct. at 2048, 52 L.Ed.2d at 759 (*quoting Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791, 794 (1935) and *Rochin v. California*, 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183, 191 (1952)).

■ Therefore, a defendant invoking the due process clause must demonstrate prejudice above and beyond that which is inherent in the workings of a clogged judicial system. In *United States v. Valentine*, 783 F.2d 1413, 1416 (9th Cir.1986), the court held that a defendant has a heavy burden to prove that pre-indictment delay

caused actual prejudice; the proof must be definite and not speculative. *See also Sixteenth Annual Review of Criminal Procedure,* 75 Georgetown L.J. 713, 954 (1987).

*Lovasco* makes clear that investigative delay is fundamentally unlike delay undertaken by the government solely to gain a tactical advantage over the accused. The *Lovasco* court held that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time. *Lovasco,* 431 U.S. at 795–96, 97 S.Ct. at 2051–052, 52 L.Ed.2d at 762–63.

Applying the foregoing principles to this case, it is clear defendant's claim of prejudicial pre-indictment delay must fail. First, with respect to the argument concerning the destruction of the tapes, nothing in the record shows who testified at the disciplinary hearings. Thus, defendant's argument that the tapes would have enabled him to refresh favorable recollections or to impeach unfavorable recollections is wholly speculative. In essence, defendant's argument amounts to nothing more than an assertion that some of the witnesses may have had diminished recollections by reason of the passage of time. Courts consistently hold that diminished recollection by witnesses does not, by itself, constitute the type of substantial prejudice warranting a finding of a due process violation. *United States v. Otto,* 742 F.2d 104 (3rd Cir.1984); *State v. Varagianis,* 128 N.H. 226, 512 A.2d 1117 (1986); *State v. Littlejohn,* 199 Conn. 631, 508 A.2d 1376 (1986). We find no merit in defendant's pre-indictment delay claim with respect to the tapes.

Defendant's second claim of prejudice due to pre-indictment delay relates to the delayed testing of the knife blade found at the scene. The laboratory test could not determine whether the blood on the blade was from a human and it revealed no identifiable fingerprints. Defendant argues "that if the blade had been tested in closer proximity to the incident they may have been able to obtain more conclusive results." However, the testimony relied upon to support this argument is, at best, inconclusive and speculative:

Q. [Defense Counsel]: All right, one last thing. This was just given to you two weeks ago?

A. [By technician who tested the blade for blood]: January 7th of this year.

Q. Is there anything in regard—Would it assist you if you would have received this, let's say, a year-and-a-half ago?

A. That would be hard to say, simply because there was so little amount present to begin with.

Q. As an expert, do you find that usually the more time it takes to test something, the harder it gets to find results?

A. As a general rule, that would be correct.

This testimony does no more than suggest that in some cases earlier testing for blood might have produced more results. However, it does not suggest that, *in this case,* it is likely that any additional blood results would have been obtained by earlier testing. Similarly, the fingerprint expert who testified did not contend that earlier testing would have revealed identifiable fingerprints; he testified that the size, type, and surface of the knife made it unlikely that any identifiable fingerprints would ever have been found on the blade. Thus, defendant's second claim of prejudice also fails because he is unable to show how earlier testing might have exculpated him. *Torres,* 116 Ariz. at 379, 569 P.2d at 809 (defendant did not establish substantial prejudice when defendant failed to allege or attempt to show how an unavailable eyewitness would have aided in defense).

We conclude that even if defendant had met the threshold burden of showing culpable prosecutorial misconduct on the issue of pre-indictment delay, which he has not, he still failed to show the required element of prejudice.

## ASSISTANCE OF COUNSEL

Defendant contends that trial counsel was ineffective under the standards enunci-

ated in *State v. Nash,* 143 Ariz. 392, 694 P.2d 222 (1985). In *Nash,* we held that ineffective assistance of counsel exists when counsel's actions are unreasonable under prevailing professional norms *and* counsel's deficient performance prejudiced the defendant. Defendant claims three decisions by his trial counsel satisfy both prongs of the *Nash* test. We disagree. On the record available to us, defendant cannot satisfy both prongs of the *Nash* test on any of the three claims.

**Failure to Request A *Willits* Instruction**

■ Defendant claims trial counsel erred when he failed to request an instruction pursuant to *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964), regarding the destruction of the tapes of the disciplinary hearing and the delayed testing of the knife blade. Defendant's contentions are meritless.

■ A *Willits* instruction permits the jury to draw an inference against the state if the state permits evidence within its control to be destroyed. A *Willits* instruction is appropriate when a defendant "prove[s] that (1) the state failed to preserve material and reasonably accessible evidence that had a tendency to exonerate the accused, and (2) there was resulting prejudice." *State v. Reffitt,* 145 Ariz. 452, 461, 702 P.2d 681, 690 (1985). However, a *Willits* instruction is not appropriate if the defendant fails to demonstrate that the absent evidence would have exonerated him. *State v. Walters,* 155 Ariz. 548, 748 P.2d 777 (App.1987).

*Willits* instructions ordinarily concern physical evidence which was used in the perpetration of the alleged crime. *See, e.g., State v. Hunter,* 136 Ariz. 45, 664 P.2d 195 (1983). Tapes of the disciplinary hearing are not that type of physical evidence. Additionally, as we have noted, there is absolutely no showing that anything in the tapes might have tended to exonerate the defendant or that the unavailability of the tapes was prejudicial to the defendant.

Nor was a *Willits* instruction appropriate with respect to the tests on the blade. Defendant argues, without any support in the record, that he was entitled to have the jury instructed that they could infer that the knife blade contained exculpatory evidence at an earlier date. As we have noted, nothing in the record supports such an inference.

Neither the blade nor anything on it was "destroyed." Even if we were to construe the testimony as does defendant, i.e., as establishing that fingerprints and blood on the knife were "destroyed," a *Willits* instruction would still have been inappropriate because there is no showing that earlier testing would have revealed any exculpatory evidence. *State v. Lamb,* 142 Ariz. 463, 473, 690 P.2d 764, 774 (1984). There was no deficiency on counsel's part in failing to request a *Willits* instruction.

**Failure to Call The Examining Physician**

■ Trial counsel did not ask the doctor who examined the victim to testify. Defendant asserts on appeal that the testimony of this doctor was crucial to determine whether the blade received in evidence could have produced the injuries suffered by the victim. No showing is made as to what the doctor's testimony would have been if he had testified. We note that defendant has never asserted that Hoefer was cut by anything other than a utility blade of the type received in evidence. Rather, he has merely maintained that any one of hundreds of identical available utility blades could have cut Hoefer.

Ordinarily, the choice of defense witnesses is a matter of strategy within the discretion of trial counsel. *State v. Rodriguez,* 126 Ariz. 28, 612 P.2d 484 (1980); *State v. Collins,* 133 Ariz. 20, 648 P.2d 135 (App. 1982) (defense counsel has power to control trial strategy in criminal proceedings). Defendant has not shown that counsel was ineffective in failing to call the doctor, nor has he shown any prejudice resulting from such failure.

**Failure to Object to Admission of Knife Blade**

■ Finally, defendant claims ineffectiveness of counsel because counsel did not object to the admission of the utility knife blade into evidence. Our examination of the record shows ample foundation for the receipt of the blade in evidence. The victim

**400**

saw a blade in defendant's hand. The blade in evidence was located in a search by investigators immediately after the assault, it was the only blade found in the vicinity of the assault, and it had blood on it. The blade was admissible, *State v. Emery*, 141 Ariz. 549, 688 P.2d 175 (1984), and counsel was not ineffective in failing to object to its receipt into evidence.

### PROPRIETY OF SENTENCE UNDER A.R.S. § 13–1206

■ This offense occurred on June 18, 1984. At that time, A.R.S. § 13–1206 provided that the offense was punishable with a life term to be served consecutively to the sentences already being served by the defendant. Effective August 3, 1984, A.R.S. § 13–1206 was amended to provide that the offense is a class 3 felony.[1] Defendant contends he should have been sentenced under the new statute.

We faced a very similar issue in *State v. Gonzales*, 141 Ariz. 512, 687 P.2d 1267 (1984). In that case a prisoner was convicted of dangerous or deadly assault under the former A.R.S. § 13–1206. The trial court determined that § 13–1206's mandatory life sentence violated the Eighth Amendment and sentenced defendant to 11.25 years in prison. The state appealed. We held that the trial court was incorrect in holding former A.R.S. § 13–1206 unconstitutional.

We went on to say, however:

> While this case was pending on appeal, the legislature amended A.R.S. § 13–1206. The statute now makes this crime a class-three felony, and the mandatory life sentence provision has been stricken from the statute. Although not addressed by either party, we must determine whether Gonzales [defendant] is to be resentenced pursuant to the provisions of former A.R.S. § 13–1206 or pursuant to the current version of that statute.
>
> Unless a statute provides otherwise, it will not govern events which occurred before its effective date.... We find no

provision indicating that the current version of A.R.S. § 13–1206 was intended to apply to events that occurred before its effective date.

*Id.* at 513, 687 P.2d at 1268. (Citations omitted.)

In this case, the assault occurred on June 18, 1984, and the trial court properly sentenced defendant under A.R.S. § 13–1206 as it existed on the date of the offense.

### CONCLUSION

In addition to the issues raised by defendant, we have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and have found none. The conviction and sentence are affirmed.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.

---

1. *Laws* 1984, Ch. 325, § 3. The statute has since been amended again to upgrade the offense to a class 2 felony; *Laws* 1987, Ch. 312, § 1, eff. May 16, 1987.