IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,          )
                               )
                   Appellee,   )          2 CA-CR 2012-0405
                               )          DEPARTMENT B
          v.                   )
                               )          O P I N I O N
ROBERT CHARLES GLISSENDORF,    )
                               )
                   Appellant.  )
_____)


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20112756001

Honorable Michael O. Miller, Judge

REVERSED IN PART
AND REMANDED WITH INSTRUCTIONS

---

Thomas C. Horne, Arizona Attorney General
  By Joseph T. Maziarz and Alan L. Amann                        Tucson
                                                   Attorneys for Appellee


Lori J. Lefferts, Pima County Public Defender
  By Kristine Maish, David J. Euchner,
    and Katherine A. Estavillo                                  Tucson
                                                  Attorneys for Appellant

---

E C K E R S T R O M, Judge.

¶1        Following a jury trial, appellant Robert Glissendorf was convicted of two counts of child molestation and sentenced to consecutive prison terms totaling thirty-four years. On appeal, he argues the state unreasonably delayed his prosecution, the trial court erred in refusing to give a jury instruction concerning the destruction of evidence, and the court erroneously admitted evidence of an aberrant sexual propensity pursuant to Rule 404(c), Ariz. R. Evid. We conclude the trial court erred in failing to provide the instruction, and we therefore reverse Glissendorf's conviction and seventeen-year sentence on count one.[1] In addition, because we agree with Glissendorf that the trial court erred in its Rule 404(c) analysis, we remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

¶2        In August 2011, Glissendorf was charged with two counts of child molestation based on acts he had committed against separate victims. Count one alleged he had molested Olivia on a particular day between 1997 and 1999, when she was under eight years old; count two alleged he had molested Tamora, then six years old, at some point between 2009 and 2010.[2]

---

[1]Our disposition on this count renders moot Glissendorf's additional argument that count one is an unconstitutionally duplicitous charge. In the event of a retrial, Glissendorf may assert a timely objection and seek to cure any duplicity problem either by requesting a special verdict form or jury instruction. *See State v. Butler*, 230 Ariz. 465, n.4, 286 P.3d 1074, 1079 n.4 (App. 2012).

[2]For ease of reading, and in order to preserve the victims' anonymity, we have provided pseudonyms for E.G. and I.K., the respective victims in counts one and two. *See* Ariz. R. Sup. Ct. 111(i).

¶3     At trial, Olivia testified that Glissendorf had molested her one night when they both were staying at a relative's house. According to Olivia, she first awoke on the living room floor, noticed her pajamas and underwear had been pulled down, observed Glissendorf touching her vagina, and went back to sleep. She then awoke in his bedroom and observed him touching her vagina again. Tamora testified that Glissendorf had once touched her underneath her underwear on the body part that "[m]akes you pee" when he was staying at Tamora's mother's house.

¶4     The trial court permitted another witness, Wanda, to testify that in Nevada in 1976, when she was six years old, Glissendorf had lured her to an apartment with candy, forced her to lie down on a couch, pulled down her pants and underwear, and touched her vulva.[3] He consequently was arrested in Nevada, although that case later was dismissed. The jury found Glissendorf guilty of molesting Olivia and Tamora, and this appeal followed the imposition of sentence.[4]

**Motion to Dismiss**

¶5     Glissendorf first argues the trial court erred in denying his motion to dismiss count one of the indictment due to the state's ten-year delay in bringing the charge. Although the motion refers to "pre accusation delay" and the denial of his "right to a speedy trial," the state construed it below as a motion to dismiss based on pre-indictment delay, and we likewise treat it as such on appeal.

---

[3]We have provided a pseudonym for this witness, whose initials are C.L.

[4]Glissendorf was acquitted of a third count of molestation against a different victim, and that charge is not a subject of this appeal.

¶6        In 2001, Olivia first reported to law enforcement that Glissendorf had molested her. The state elected not to pursue charges at that time, and police closed the case. The state asserted below that it did not delay prosecution to secure any tactical advantage; rather, the delay was the result of its decision not to prosecute "a single victim case with no corroboration." When Tamora came forward in 2010 alleging that Glissendorf had committed a similar act, the first case was reopened and the state elected to charge him based on Olivia's accusations. The trial court denied the motion to dismiss without making express findings.

¶7        The Due Process Clauses of the Fifth and Fourteenth Amendments prevent the state from bringing criminal charges against a person when it has unreasonably delayed doing so. *State v. Lacy*, 187 Ariz. 340, 346, 929 P.2d 1288, 1294 (1996); *accord United States v. Lovasco*, 431 U.S. 783, 789, 790 (1977); *United States v. Marion*, 404 U.S. 307, 324-25 (1971). "To establish that pre-indictment delay has denied a defendant due process, there must be a showing that the prosecution intentionally delayed proceedings to gain a tactical advantage over the defendant or to harass him, and that the defendant has actually been prejudiced by the delay." *State v. Broughton*, 156 Ariz. 394, 397, 752 P.2d 483, 486 (1988); *accord Lacy*, 187 Ariz. at 346, 929 P.2d at 1294; *State v. Williams*, 183 Ariz. 368, 379, 904 P.2d 437, 448 (1995). A defendant bears a "heavy burden to prove that pre-indictment delay caused actual prejudice." *Broughton*, 156 Ariz. at 397-98, 752 P.2d at 486-87. We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *State v. Lemming*, 188 Ariz. 459, 460, 937 P.2d 381, 382 (App. 1997). In the absence of express findings, we will uphold the court's ruling if it is

4

supported by any reasonable evidence in the record. *See State v. Nuckols*, 229 Ariz. 266, ¶ 7, 274 P.3d 536, 538 (App. 2012).

**¶8** Here, the record supports a finding that state officials did not intentionally delay prosecution to gain a tactical advantage or to harass Glissendorf. Instead, the record indicates the state decided not to prosecute him in 2001 because it found the evidence subject to reasonable doubt. The trial court thus did not abuse its discretion in denying the motion to dismiss. Although Glissendorf asserts the state's charging decisions with respect to count one were "wholly improper," he has cited no legal authority to support this position, and we therefore need not address the point any further. *See In re $26,980.00 U.S. Currency*, 199 Ariz. 291, ¶ 28, 18 P.3d 85, 93 (App. 2000). Because Glissendorf has failed to establish the first step in the two-step test, he has not demonstrated that he is entitled to relief on appeal. *See Lacy*, 187 Ariz. at 346, 929 P.2d at 1294 (claim based on pre-indictment delay fails "[a]bsent proof of an intentional delay for strategic or harassment purposes").

**¶9** Glissendorf nevertheless contends the Arizona Supreme Court has misinterpreted the United States Supreme Court's precedents of *Marion* and *Lovasco*, and he asserts that "tactical delay [i]s not a *sine qua non* of a due process violation." Relying in part on *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985), he maintains that unreasonable pre-indictment delay should be determined based on a balancing test, and intentional or reckless behavior by the state is not essential to the analysis. However, we are bound by the decisions of our supreme court, including its interpretation of federal constitutional rights. *See State v. Stanley*, 217 Ariz. 253, ¶ 28, 172 P.3d 848, 854 (App.

5

2007); *see also State v. Vickers*, 159 Ariz. 532, 543 n.2, 768 P.2d 1177, 1188 n.2 (1989) (Arizona courts not bound by Ninth Circuit's interpretation of what United States Constitution requires). We therefore do not address this argument further.

**Jury Instruction**

¶10  Glissendorf next contends the trial court erred in refusing his request for a jury instruction derived from *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964). Although he did not submit his proposed instruction in writing, in accordance with Rule 21.2, Ariz. R. Crim. P., the court nevertheless understood his request as one for the following "standard" instruction:

> If you find that the State has lost, destroyed, or failed to preserve evidence whose contents or quality are important to the issues in this case, then you should weigh the explanation, if any, given for the loss or unavailability of the evidence. If you find that any such explanation is inadequate, then you may draw an inference unfavorable to the State, which in itself may create a reasonable doubt as to the defendant's guilt.

State Bar of Arizona, *Revised Arizona Jury Instructions (Criminal)* Std. 10 (3d ed. rev. 2012).

¶11  During the delay between Olivia's allegation that she was molested and the state's pursuit of charges arising from that allegation, the state destroyed a video recording of Olivia's 2001 interview with a detective from the Tucson Police Department (TPD) and an employee from Child Protective Services (CPS). The police department did not retain this evidence because its former policy called for the destruction of evidence within six to twelve months of closing a case. CPS likewise did not retain a

6

recording of this interview. As a result, a report prepared by Detective Ridgeway in 2001 is the only extant record of Olivia's allegations at that time. That report memorializes Olivia's statement, in relevant part, as follows:

> The victim told me about an incident that happened to her when she was about six years old.[5] She was staying at her [relative's] house with her sister and they were sleeping on the livingroom floor. [Glissendorf] went into the livingroom and picked up the victim[']s sister and put her into his bed. [Glissendorf] then went back into the livingroom and pulled down the victim[']s pajama bottoms and underwear down [sic] and started touching her vagina. The suspect then quit and left the room. This was the only time that this happened.

¶12 As noted above, Olivia testified at the 2012 trial about two acts of molestation on the night she stayed at her relative's house: one in the living room and another in the bedroom. As to the living room incident, Olivia testified that when she awoke, she noticed her sister was no longer sleeping beside her, but she denied seeing Glissendorf carry her sister away to the bedroom. In regard to the bedroom incident, Olivia's trial testimony described the layout of the bedroom and her position relative to Glissendorf on the bed. She specifically recalled the television being on and an "infomercial" playing when the second molestation occurred. In addition, Olivia testified that she remembered being five years old when she was molested, because she recalled suffering a leg injury later that same year.

¶13 During cross-examination, Glissendorf attempted to highlight the discrepancies between Olivia's testimony and her allegations from 2001, using the police

---

[5]The record suggests that Olivia's statement to the detective occurred at least two years after the alleged incident.

report for impeachment. Olivia maintained the report was inaccurate. She claimed that Detective Ridgeway "misheard what [she had] said" during the interview and that he had omitted the bedroom incident from his report even though she had mentioned it at the time. She further claimed that her memory of the incident was better in 2012 than in 2001.

¶14        On redirect examination, the state elicited from Olivia that her interview with CPS had lasted approximately 1.5 hours, and the report summarizing that interview "was very short," consisting of only six sentences. Olivia then gave an affirmative answer when the state asked, "Would it be fair to say that you said a lot more than five or six sentences during that hour and a half worth of interview?" The state later revisited the topic of the report with Detective Stacey Lee, who had reopened the case in 2010. She offered an opinion that Detective Ridgeway's report was "brief, and it really didn't give . . . a very good idea of what happened," leading her to conduct another interview with Olivia.

¶15        During closing argument, after the trial court had denied the proposed *Willits* instruction, the state asked the jury to consider the court's instructions relating to witness credibility when evaluating Olivia's testimony. The state maintained that, contrary to Glissendorf's assertion in his opening statement, "you didn't hear an evolution in [Olivia's] story. She testified to the exact same thing, him touching her vagina in the living room."

¶16        In Glissendorf's summation, he emphasized that Olivia's testimony had differed from her 2001 allegations. He noted that Olivia first reported seeing him pick up

her sister and carry her to the bedroom, whereas in Olivia's "more detail[ed]" testimony at trial, her sister was not present in the living room when Olivia awoke, and it was Olivia, not her sister, who was taken into the bedroom. According to Glissendorf's theory of the case, Olivia's memory was unreliable, at minimum, and she possibly had fabricated the additional allegations about the bedroom incident because her first report had not resulted in prosecution. Glissendorf also criticized the state for "impl[ying] . . . that somehow Detective Ridgeway must be incompetent" or that his report was "just a summary" rather than a complete and accurate record of the earlier interview. In rebuttal, the state claimed that neither side could make any assumptions about the lost recording, and it maintained that Glissendorf "can't ask you to assume [the lost evidence i]s going to be against [Olivia] in any way, shape or form."

¶17        We review a trial court's ruling regarding a *Willits* instruction for an abuse of discretion. *See State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995). A defendant is entitled to a *Willits* instruction, which permits the jury to draw a negative inference against the state, when "'(1) the state failed to preserve material and reasonably accessible evidence that had a tendency to exonerate the accused, and (2) there was resulting prejudice.'" *Broughton*, 156 Ariz. at 399, 752 P.2d at 488, *quoting State v. Reffitt*, 145 Ariz. 452, 461, 702 P.2d 681, 690 (1985); *accord State v. Speer*, 221 Ariz. 449, ¶ 40, 212 P.3d 787, 795 (2009). By this standard, a defendant need not establish with certainty that the lost evidence was exculpatory; an instruction is required if the state "failed to preserve material evidence that *might* aid the defendant." *State v. Youngblood*, 173 Ariz. 502, 506, 844 P.2d 1152, 1156 (1993); *accord State v. Lopez*, 163 Ariz. 108,

9

113, 786 P.2d 959, 964 (1990) ("A *Willits* instruction is appropriate when the state destroys or loses evidence potentially helpful to the defendant."). As our supreme court has observed, "[w]hen items are lost or destroyed a defendant is unable to determine whether they would have been helpful in his defense," and the *Willits* instruction is designed "to overcom[e] this problem and ensur[e] a fair trial." *State v. Leslie*, 147 Ariz. 38, 46-47, 708 P.2d 719, 727-28 (1985). Accordingly, while a defendant must do more than simply speculate that the unpreserved items would have been helpful to his case, *see, e.g.*, *State v. Fulminante*, 193 Ariz. 485, ¶ 62, 975 P.2d 75, 93 (1999); *State v. Dunlap*, 187 Ariz. 441, 463-64, 930 P.2d 518, 540-41 (App. 1996); *State v. Smith*, 158 Ariz. 222, 227, 762 P.2d 509, 514 (1988), he is entitled to an instruction if he can demonstrate that the lost evidence would have been material and potentially useful to a defense theory supported by the evidence. *Smith*, 158 Ariz. at 227, 762 P.2d at 514.

¶18 The parties here dispute the exonerating potential of the lost video recording from 2001. When deciding whether the first condition for a *Willits* instruction has been met, it is necessary to consider the nature of the case and the available evidence. In cases such as the one before us, where the principal evidence of guilt is the testimony of an alleged victim, the jury's primary task is to assess the accuracy and credibility of that testimony. *See State v. Jerousek*, 121 Ariz. 420, 427, 590 P.2d 1366, 1373 (1979) (uncorroborated testimony of victim sufficient to convict defendant of offense); *State v. Verdugo*, 109 Ariz. 391, 393, 510 P.2d 37, 39 (1973) (same); *State v. Haston*, 64 Ariz. 72, 77, 166 P.2d 141, 144 (1946) (same).

10

¶19 When, as here, the alleged victim testifies about uncorroborated incidents that occurred many years in the past, any prior statements made closer in time to the incident become an especially important yardstick by which the reliability of the testimony may be assessed. To the extent those statements are inculpatory and consistent with the trial testimony, they are material and potentially useful for the prosecution.[6] To the extent those statements are inconsistent with the witness's trial testimony, they are material and potentially useful for the accused. *See* Ariz. R. Evid. 801(d)(1)(A); *Trickel v. Rainbo Baking Co. of Phx.*, 100 Ariz. 222, 226, 412 P.2d 852, 854 (1966) (noting witness's inconsistent description of events "materially related to the subject matter"). With a concrete record of a victim's past statements, a defendant can potentially identify any inconsistencies or other circumstances that might tend to create a reasonable doubt and suggest faulty memory, misperception, or untruthfulness by the victim.

¶20 The recording of Olivia's interview from 2001 was "obviously material . . . and reasonably accessible," *State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984), as well as potentially useful for Glissendorf's defense. This is not a case involving mere speculation, in the face of contrary indications, about the exculpatory potential of missing evidence, *e.g.*, *Smith*, 158 Ariz. at 227, 762 P.2d at 514, or where the defendant likely "benefitted from its destruction." *Perez*, 141 Ariz. at 464, 687 P.2d at 1219 (emphasis omitted). As Glissendorf correctly noted below when seeking the *Willits*

---

[6]Although prior consistent statements generally are not admissible to support the credibility of a witness's testimony, they are admissible to rebut a challenge to the witness's testimony. *See* Ariz. R. Evid. 801(d)(1)(B) (permitting prior consistent statements offered to rebut charge of recent fabrication, improper influence, or improper motive).

instruction, the police report strongly suggests the video recording destroyed by the state would have been inconsistent with Olivia's trial testimony in some significant respects.

¶21    The report indicates that in 2001, Olivia said the molestation incident in the living room "was the only time that this happened." Yet at trial she testified to a second act of molestation that occurred in the bedroom. She also gave a slightly different account of the living room incident, changing what she had recalled regarding her sister and seemingly reversing their roles. Olivia then disputed the veracity of the police report to the extent it contradicted her testimony. Detective Lee, however, acknowledged that all TPD detectives are trained to write complete and accurate reports that include all pertinent details to an investigation.

¶22    In this case, as in past cases warranting reversal, "[t]he state's questions during trial and comments during closing argument testify strongly to the materiality of the lost evidence." *Leslie*, 147 Ariz. at 47, 708 P.2d at 728. Given Olivia's very young age at the time of the alleged molestation and the distinct possibility of changed or false memories over the many years preceding the prosecution, her statements closer in time to the alleged offense were vital to assessing her credibility. The "contents" of the lost video recording, therefore, were critical to Glissendorf's ability to challenge her testimony. *Willits*, 96 Ariz. at 187, 393 P.2d at 276.

¶23    The prejudice that resulted from the destruction of this evidence, as Glissendorf observed below, was that he was deprived of the primary tool by which he could effectively cross-examine Olivia, the state's only witness to the incident. The state then compounded the prejudice by suggesting the police report provided both an

incomplete and inaccurate record of her 2001 interview. The loss of the video thus created a two-fold harm, depriving Glissendorf of objective impeachment evidence and undermining the exculpatory impact of the evidence of the 2001 interview that survived. As the prosecutor's questions and insinuations about the police report demonstrate, the state essentially sought a favorable inference from the destruction of the video recording—namely, that it might be consistent with Olivia's trial testimony. And when Glissendorf attempted to argue the substance of the *Willits* instruction to the jury during closing argument, the state neutralized this effort by insisting the jury could not assume the missing evidence would be "against [Olivia] in any way, shape or form," an assertion in direct contradiction to the instruction Glissendorf sought.

¶24 When the trial court denied the requested instruction here, it abused its discretion by applying an incorrect legal standard. *See State v. Mohajerin*, 226 Ariz. 103, ¶ 18, 244 P.3d 107, 108 (App. 2010); *State v. Slover*, 220 Ariz. 239, ¶ 4, 204 P.3d 1088, 1091 (App. 2009). In its ruling, the court found there had been "no[] . . . showing that the evidence would have a tendency to exonerate the defendant." The court further stated that "there has been no showing of exculpatory evidence within the materials that were destroyed." While this imprecise language certainly may be found in case law surrounding *Willits*, the proper analysis, as noted above, was whether the destroyed evidence "*might* be exculpatory," *Youngblood*, 173 Ariz. at 506, 844 P.2d at 1156, or "potentially helpful to the defendant," *Lopez*, 163 Ariz. at 113, 786 P.2d at 964, and whether he suffered prejudice from its loss. *Perez*, 141 Ariz. at 464, 687 P.2d at 1219. By these standards, Glissendorf was entitled to the *Willits* instruction he requested.

13

Indeed, the trial court acknowledged that the lost evidence provided "a basis for cross-examination." To the extent the court nonetheless determined that no prejudice resulted from the loss of the video, the record does not support this conclusion. *See Files v. Bernal*, 200 Ariz. 64, ¶ 2, 22 P.3d 57, 58 (App. 2001) (observing "court abuses its discretion where the record fails to provide substantial support for its decision"). As discussed above, the destruction of the video recording deprived the defendant of the primary tool by which he could challenge the evidence against him.

**¶25** We are not persuaded by the state's arguments in support of the trial court's ruling. Specifically, the state contended below that Glissendorf was not entitled to a *Willits* instruction in the absence of a showing that the state had acted in bad faith. We agree that there is no suggestion of bad faith on the record before us, but such a showing is not required for a *Willits* instruction to issue. Although the supreme court acknowledged in *Willits* that a bad faith effort to conceal the truth might motivate the state to destroy evidence, the court also emphasized that "[e]vidence . . . may be innocently destroyed without a fraudulent intent simply through carelessness or negligence or . . . an unwillingness to make the necessary effort to preserve it." 96 Ariz. at 191, 393 P.2d at 279. And in that event, "the State cannot be permitted the advantage of its own conduct in destroying evidence which might have substantiated the defendant's claim regarding the missing evidence." *Id.* Here, the destruction of the evidence pursuant to TPD policy, coupled with the lack of an instruction, gave the state this very advantage.

14

¶26        Indeed, had the trial court concluded that the state had destroyed the video in bad faith, the remedy would have been more than a jury instruction. "When the state exhibits bad faith in the handling of critical evidence, it is fundamentally unfair to allow the trial to proceed," and the remedy is to bar the prosecution of the case. *Youngblood*, 173 Ariz. at 507, 844 P.2d at 1157. But even when a trial court does not make a finding of bad faith, a *Willits* instruction nonetheless allows a jury to draw that inference if the circumstances warrant it. "[F]raudulent intent . . . is a fact which may be inferred from all the evidence." *Willits*, 96 Ariz. at 191, 393 P.2d at 279. Yet bad faith is not needed for the instruction to "operate in the defendant's favor." *Id.*

¶27        In a similar vein, the state contends "this is not the kind of situation a *Willits* instruction is designed to remedy," because the state's initial decision not to prosecute provided "a fully adequate explanation for the loss of the evidence." To the extent this argument urges us "not [to] penalize the prosecution when its action is neither malicious nor inadvertent," this is the dissenting view from *Willits*, which we are neither inclined nor at liberty to adopt. 96 Ariz. at 192, 393 P.2d at 279 (Udall, C.J., dissenting). Moreover, we disagree with the state that destroying the video recording was consistent with its duty to preserve material evidence. *See Leslie*, 147 Ariz. at 47, 708 P.2d at 728; *Perez*, 141 Ariz. at 463, 687 P.2d at 1218. If the state wishes to preserve its flexibility to reopen cases in the event that more evidence becomes available, then it is negligent to also have a policy of destroying material evidence after closing a case, especially after only six to twelve months. Indeed, it would appear entirely foreseeable, in cases

involving allegations of sex crimes against children, that subsequent events might corroborate prior allegations. That is, of course, precisely what happened here.

¶28        More fundamentally, however, we disagree with the state's suggestion that a defendant must demonstrate the state's negligence or wrongdoing to be entitled to an instruction. Ordinarily, when the materiality and exonerating potential of evidence is established, and when the state possessed or had reasonable access to this evidence, then some degree of fault is implied by its loss, and the instruction is appropriate. *See State v. Hill*, 174 Ariz. 313, 321 n.4, 848 P.2d 1375, 1383 n.4 (1993) (noting instruction warranted "when the state fails to preserve evidence important to the case"). It bears mention that *Willits* expressly applies to situations where evidence is "innocently destroyed," because "the damage to the defendant is equally great." 96 Ariz. at 191, 393 P.2d at 279. A *Willits* instruction is primarily designed to be remedial, and even prophylactic; it is not a punitive or deterrent measure. The instruction promotes fairness in proceedings where the destruction of evidence does not violate a defendant's right to due process and require the dismissal of charges. *See, e.g.*, *State v. Bocharski*, 200 Ariz. 50, ¶ 43, 22 P.3d 43, 52 (2001) (instruction made "jurors . . . free to consider this less-than-ideal police work in deciding the matter"); *State v. Vickers*, 180 Ariz. 521, 528, 885 P.2d 1086, 1093 (1994) (instruction adequate when defendant lost opportunity to independently test evidence); *State v. Schad*, 163 Ariz. 411, 416, 788 P.2d 1162, 1167 (1989) (instruction "accomplished the most that the defendant could have proved" from destroyed evidence); *State v. Tucker*, 157 Ariz. 433, 443, 759 P.2d 579, 589 (1988) (instruction allowed "jury [to] infer exactly what the destroyed evidence, at best, could

have proved"); *cf. State v. Escalante*, 153 Ariz. 55, 61, 734 P.2d 597, 603 (App. 1986) (finding dismissal required when state destroyed critical evidence that could have proved exonerating). Moreover, the actual content of a *Willits* instruction is far from catastrophic to the state's case. It expressly preserves the jury's discretion to give the state's destruction of evidence any weight the jury sees fit in light of the case before it and the circumstances of the destruction.

¶29    The state correctly points out that both *Youngblood* and *Willits* speak of the adequacy of the state's explanation for the loss of evidence.[7] But the state misunderstands the import of this language, which actually relates to the jury weighing the evidence. A *Willits* instruction "direct[s] the jurors' attention to all matters properly within the issues for their determination," including the state's explanation for the lost evidence. *Willits*, 96 Ariz. at 189, 393 P.2d at 277-78. The instruction serves to clarify the permissive inferences available in the case, *see State v. Eagle*, 196 Ariz. 27, ¶ 19, 992 P.2d 1122, 1126 (App. 1998), and the state's proffered reason for failing to preserve material evidence is relevant to what inferences, if any, the jury actually draws. *See Youngblood*, 173 Ariz. at 506, 507, 844 P.2d at 1156, 1157; *see also State v. Mitchell*, 140 Ariz. 551, 557, 683 P.2d 750, 756 (App. 1984) (rejecting claim that lost evidence

---

[7]*See Youngblood*, 173 Ariz. at 506, 844 P.2d at 1156 ("[I]f [jurors] find that the state has lost, destroyed or failed to preserve material evidence that *might* aid the defendant and they find the explanation for the loss inadequate, they may draw an inference that that evidence would have been unfavorable to the state."); *Willits*, 96 Ariz. at 191, 393 P.2d at 279 ("Had the instruction been given, the jury would have been in the position of weighing the explanation and, if they believed it was not adequate, an inference unfavorable to the prosecution could have been drawn.").

17

necessarily entitles defendant to favorable inference).  The state's motivation and fault in failing to preserve evidence, therefore, are usually considerations for the jury when deciding whether the state has met its burden of proving guilt beyond a reasonable doubt.

¶30            In a different line of argument, the state points to case law from Division One of this court which states that for a *Willits* instruction to be warranted, "evidence must possess exculpatory value that is apparent before it is destroyed."  *State v. Davis*, 205 Ariz. 174, ¶ 37, 68 P.3d 127, 133 (App. 2002); *accord State v. Walters*, 155 Ariz. 548, 551, 748 P.2d 777, 780 (App. 1987); *State v. Tinajero*, 188 Ariz. 350, 355, 935 P.2d 928, 933 (App. 1997), *disapproved on other grounds by State v. Powers*, 200 Ariz. 363, ¶ 10, 26 P.3d 1134, 1135 (2001).  But our supreme court appears to have neither adopted nor applied this standard.  In *Leslie*, our supreme court implied that the exculpatory potential of certain evidence can depend upon trial developments.  *See* 147 Ariz. at 47, 708 P.2d at 728.  And in *Perez*, the court specifically provided a test, albeit in judicial dictum, for giving a *Willits* instruction in "situations [when] it may not be clear that a particular bit of evidence of which the state is aware is, or will prove to be, material." *Perez*, 141 Ariz. at 464 n.5, 687 P.2d at 1219 n.5.[8]

---

[8]In that event, the supreme court has emphasized that the state's fault is a threshold question to be decided by the trial court:

**¶31** Notably, the Division One cases cited all rely upon *California v. Trombetta*, 467 U.S. 479 (1984). But the issue in that case was whether the destruction of evidence resulted in a due process violation that required the suppression of evidence. *Id.* at 483-84. Whether police have breached their duty under the due process clause to collect or preserve potentially exculpatory evidence is an inquiry that ultimately depends on whether the police acted in bad faith. *See Speer*, 221 Ariz. 449, ¶¶ 36-37, 212 P.3d at 795; *Youngblood*, 173 Ariz. at 506, 844 P.2d at 1156; *Dunlap*, 187 Ariz. at 452, 930 P.2d at 529. A *Willits* instruction is a lesser remedy than suppression of evidence that applies in the absence of a finding of bad faith and when the failure to preserve evidence does not violate due process. *See Youngblood*, 173 Ariz. at 506-07, 844 P.2d at 1156-57; *see also State v. O'Dell*, 202 Ariz. 453, ¶ 26, 46 P.3d 1074, 1081 (App. 2002) (recognizing *Willits* instruction may be appropriate in particular cases, notwithstanding lack of due process obligation to preserve breathalyzer data). The due process standard of constitutional materiality, therefore, is different than the materiality standard for a *Willits* instruction. And even were we to accept the state's contrary proposition, we still would find an instruction warranted here, because the exculpatory value of a young child's interview is

---

> When the state fails to procure and/or assure the preservation of evidence that, though not obviously material, turns out to be material, it is up to the trial judge to determine if the state's failure to recognize its materiality was reasonable or not and to give a *Willits* instruction only where it finds the failure to have been unreasonable.

*Perez*, 141 Ariz. at 464 n.5, 687 P.2d at 1219 n.5.

19

apparent in "a single victim [molestation] case with no corroboration"—especially when the state initially has declined to prosecute.

¶32 The state has not argued that the failure to provide a jury instruction was harmless here, nor could we find it to be so. *See State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). The evidence of the defendant's guilt on count one turned entirely on the reliability of Olivia's testimony about an incident that purportedly occurred some twelve to fourteen years earlier, and which she had first reported two years after the event. For this reason, the contents of the lost video recording that documented Olivia's prior statements became a central issue in the case. Because we cannot find the error had no effect on the jury's verdict on count one, *see id.*, we reverse the conviction and sentence on this count. We do not disturb the conviction on count two on this ground because the requested instruction applied only to count one, and Glissendorf has not developed an argument showing he is entitled to relief on count two as a result of the error concerning count one. *See State v. Edwards*, 1 Ariz. App. 42, 44, 399 P.2d 176, 178 (1965) (observing appellant always carries burden of demonstrating error); *see also State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989) (noting failure to develop and support legal argument in accordance with Rule 31.13, Ariz. R. Crim. P., results in waiver and abandonment of claim).

## Evidence of Aberrant Sexual Propensity

¶33 Last, Glissendorf maintains the trial court erred in granting the state's pretrial motion and admitting Wanda's testimony pursuant to Rule 404(c), Ariz. R. Evid.,

20

over his objection.  We review a court's admission of evidence under Rule 404(c) for an abuse of discretion.  *State v. Aguilar*, 209 Ariz. 40, ¶ 29, 97 P.3d 865, 874 (2004).

¶34　　　　When a defendant is charged with a sexual offense, Rule 404(c) provides that "evidence of other crimes, wrongs, or acts may be admitted . . . if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." The rule directs the trial court to make a number of findings on the record before such other-act evidence may be admitted.  Ariz. R. Evid. 404(c)(1)(D).  Specifically, the court must find each of the following conditions is met:

> (A) The evidence is sufficient to permit the trier of fact to find that the defendant committed the other act.
>
> (B) The commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged.
>
> (C) The evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403[, Ariz. R. Evid.]

Ariz. R. Evid. 404(c)(1)(A) through (C).  In weighing the probative value and risk of unfair prejudice posed by the admission of other-act evidence, Rule 404(c)(1)(C) requires the trial court to consider all relevant factors, including the remoteness of the other act, its frequency, the strength of the evidence showing the defendant committed it, its similarity or dissimilarity to the charged offenses, and any surrounding circumstances.

¶35　　　　Here, the trial court acknowledged that Wanda's proposed testimony related to an isolated act that was very remote in time and dissimilar in some respects

21

from the current offenses. The court nevertheless determined that, given the similar ages of the victims and the nature of the sexual touching, her proposed testimony provided a basis to infer Glissendorf had an aberrant sexual propensity to commit the charged offenses, and the probative value of this evidence was not substantially outweighed by its risk of unfair prejudice. These findings are supported by the record.

¶36 Glissendorf maintains the trial court erred because the incident with Wanda "was extremely remote, dissimilar and involved inconsistent allegations." According to a Nevada police record from 1976, the incident involved a stranger who "pulled [Wanda] out of [a] tree" during the daytime, locked her inside an apartment, held her there despite her screams, attempted to penetrate her vagina with his penis, and then gave her $2 upon her release. In contrast to this "predatorial . . . stalking" and attempted rape, Glissendorf characterizes the charges in this case as involving the "opportunistic molestation" of sleeping victims who all knew him. He therefore asserts that "when all of these factors are properly evaluated," they "mandate[] a conclusion that the probative value was substantially outweighed by the danger of unfair prejudice" and "compel[] the *preclusion* of the evidence."

¶37 We reject the argument that the evidence was necessarily inadmissible under Rule 404(c). The parties discussed these discrepancies and differences at the pretrial hearing, and they were thus considered by the trial court. "Exact similarity between acts is not required" for admission under the rule. *State v. Weatherbee*, 158 Ariz. 303, 304, 762 P.2d 590, 591 (App. 1988). Furthermore, as the court noted at the hearing, the state did not seek to introduce any Nevada document into evidence. Rather,

22

the state sought to introduce Wanda's proposed testimony based on her 2011 interview with Detective Lee. And, as noted above, Wanda's trial testimony concerned an incident that was similar to the charged offenses insofar as it involved Glissendorf touching the genitals of a six-year-old girl.

¶38        To the extent Wanda's testimony was inconsistent with her allegations in 1976, this affected the weight to be given to her testimony, but it did not render it inadmissible under Rule 404(c). The trial court noted it had listened to a recording of Wanda's interview with TPD and found her proposed testimony to be credible and "very strong." We cannot find the court abused its discretion in crediting this account or in determining that it presented clear and convincing evidence of the prior incident. *See State v. Herrera*, 232 Ariz. 536, ¶ 26, 307 P.3d 103, 113-14 (App. 2013) (noting uncorroborated testimony of victim sufficient to justify admission under rule); *State v. Vega*, 228 Ariz. 24, n.4, 262 P.3d 628, 633 n.4 (App. 2011) (same).

¶39        Glissendorf is correct, however, that one aspect of the trial court's analysis under Rule 404(c) was flawed and lacked an evidentiary basis. The court's written ruling contains the following express finding:

> Surrounding Circumstances. The 1976 act is similar in that the Defendant normally used inducement rather than assaultive force to commit the acts. Additionally, after the sexual act was completed, Defendant attempted to placate the girl to induce her silence.

Glissendorf notes, without dispute from the state, that the present offenses involved no inducement or placating, and all the charges here involved sleeping children. When the court weighed the potential prejudice and probative value of the other-act evidence under

23

Rules 404(c)(1)(C) and 403, it thus failed to note a significant dissimilarity between the present offenses and the prior act involving Wanda. The court unaccountably characterized this as a similarity, which would tend to favor admission.[9] A trial court abuses its discretion when the reasons given for its ruling are clearly untenable, *Herrera*, 232 Ariz. 536, ¶ 19, 307 P.3d at 112, the record does not support its decision, *Files*, 200 Ariz. 64, ¶ 2, 22 P.3d at 58, or "a discretionary finding of fact is 'not justified by, and clearly against, reason and evidence.'" *State v. Aguilar*, 224 Ariz. 299, ¶ 6, 230 P.3d 358, 359 (App. 2010), *quoting State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983). Here, the court's erroneous finding embedded in its balancing of Rule 403 factors constitutes an abuse of discretion. *Cf. State v. Johnson*, 229 Ariz. 475, ¶ 20, 276 P.3d 544, 551 (App. 2012) (recognizing consideration of erroneous factor could affect sentencing calculus); *Slover*, 220 Ariz. 239, ¶ 4, 204 P.3d at 1091 ("A trial court abuses its discretion if it . . . exercises its discretion based on incorrect legal principles.").

¶40 Despite this error, reversal of counts one and two does not automatically result. Here, remand is appropriate to allow the trial court to clarify whether the error made in the course of the evidentiary ruling has, in fact, resulted in the admission of inadmissible evidence. *See Herrera*, 232 Ariz. 536, ¶¶ 12-13, 307 P.3d at 110; *see also State v. Taylor*, 169 Ariz. 121, 125-26, 817 P.2d 488, 492-93 (1991).

---

[9]Given the disharmony of this statement with the trial court's other findings, as well as the illogic of such a finding given the facts in the record, we think it possible that this language in the order may have arisen from a clerical error. However, we are bound to consider the record before us and cannot disregard an express finding based on our own speculation about its origin.

**¶41** We decline to consider de novo whether the challenged evidence was admissible. As noted, the trial court credited Wanda's account from her recorded interview with police, finding it to be "very strong" evidence relevant to the assessments under Rule 404(c)(1)(A) and (C)(iii). That audio recording has not been included in the record on appeal. Furthermore, it is not our role to evaluate the credibility of this witness's account and resolve conflicts in the evidence. *See State v. Smith*, 208 Ariz. 20, ¶ 21, 90 P.3d 221, 227 (App. 2004). We therefore remand the matter to the trial court to consider whether, in light of the record available to the previous judge, the proposed testimony was admissible. *Cf. State v. Berger*, 171 Ariz. 117, 120, 828 P.2d 1258, 1261 (App. 1992) (remanding for retrospective finding on question of defendant's competence). On remand, the decision under Rule 404(c), including the balancing of potential prejudice and probative value, "will be within the sound discretion of the trial court." *Taylor*, 169 Ariz. at 126, 817 P.2d at 493. If the court finds the evidence admissible, then the conviction and sentence on count two will be affirmed. *See Berger*, 171 Ariz. at 120, 828 P.2d at 1261. If the court finds the evidence inadmissible, then the conviction and sentence on count two will be reversed, as the erroneous admission of Wanda's testimony was not harmless in the context of this case. *See Bible*, 175 Ariz. at 588, 858 P.2d at 1191.[10]

---

[10]A finding of inadmissibility also would provide an independent ground for reversing the conviction and sentence on count one, which we have already set aside due to the jury instruction error.

25

**Sentencing Minute Entry**

**¶42**        In disposing of this appeal, we encountered the following error on page three of the trial court's sentencing minute entry: "IT IS ORDERED, all fines, fees, assessments and/or restitution are reduced to a Criminal Restitution Order, with no interest, penalties or collection fees to accrue while the defendant is in the Department of Corrections." Such an order was unauthorized by law. *See State v. Lopez*, 231 Ariz. 561, ¶¶ 2, 5, 298 P.3d 909, 910 (App. 2013). In the event Glissendorf's conviction and sentence on count two are upheld, the sentencing minute entry must be modified to delete this erroneous provision regarding a criminal restitution order.

**Disposition**

**¶43**        For the foregoing reasons, we reverse Glissendorf's conviction and sentence on count one. We remand the case for a redetermination of the admissibility of the sexual propensity evidence under Rule 404(c). If the trial court, consistent with this court's instructions, finds the evidence admissible, the conviction and sentence on count two are affirmed, as modified; if the evidence is inadmissible, the conviction and sentence on count two are reversed.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge

CONCURRING:

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Presiding Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

26