NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DONALD LEE SCOTT, *Appellant.*

No. 1 CA-CR 21-0024
FILED 2-24-2022

Appeal from the Superior Court in Maricopa County
No.  CR2018-106340-001
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Peter B. Swann and Judge D. Steven Williams joined.

---

**B A I L E Y**, Judge:

¶1        Donald Lee Scott appeals his conviction and sentence for first-degree murder.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        Late one evening in December 1988, Scott took his then-wife, Diana,[2] on a drive through the desert near the Cave Creek Highway.  The couple rarely went to the desert, and then only in the daytime to practice shooting Scott's guns.

¶3        About half a mile south of the highway, Scott pulled directly up to the body of a deceased woman, later identified as Amy.  After walking out to Amy's body, Scott calmly informed Diana that the woman had visible gunshot wounds.  Scott drove to the nearest phone and contacted law enforcement.

¶4        Officers arrived and Scott easily directed them to Amy, even though the area was particularly dark and desolate.  Scott told them that they happened upon Amy while driving around in the desert.  Scott claimed he knew the area because it was where he met Diana years earlier, a fact she would later refute.  Shortly after finding Amy's body, Scott instructed Diana to tell officers they were together the entire day leading up to their discovery.  At that time, however, Scott was not considered a suspect and would not be contacted again until years later.

¶5        At the crime scene, officers saw that Amy was lying in a pool of blood and had suffered multiple gunshot wounds.  Amy's pants were partially open, she had no underwear, and her shoes were coming off her

---

[1] We view and thus recount the facts in the light most favorable to sustaining the jury's verdict. *See State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

[2] We use pseudonyms to protect the privacy of the victim and witnesses.

feet. It appeared she had been shot and then dragged a short distance. A medical examiner determined that Amy was shot three times, including one gunshot wound to the back of her head. The evidence suggested that Amy died the day her body was discovered. The examiner found premortem bruising on Amy's legs and an abrasion on her genitals. The examiner collected a swab from Amy's vaginal canal for future testing.

¶6            Over the next 30 years, as DNA technology advanced, forensic scientists continued to test Amy's vaginal swab. The scientists found sperm cells with intact "tails" on the swab, which do not typically survive past 24 hours of ejaculation. The scientists eventually identified a single source DNA profile in the sperm cells. In 2018, a cold case detective matched Scott's DNA to the DNA profile on the vaginal swab and Amy's clothing.

¶7            The State charged Scott with one count of first-degree murder, alleging alternate theories of premeditated and felony murder. At trial, Defense counsel argued that Scott had consensual sex with Amy days before her murder, he had no contact with her after that encounter, and he was not involved in her murder. The jury returned a guilty verdict. Nine jurors found premeditated and felony murder, two jurors found premeditated murder, and one juror found felony murder. The superior court sentenced Scott to life imprisonment with the possibility of release after 25 years.

¶8            We have jurisdiction over Scott's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

### I.   Denial of Motion to Admit Hearsay Statements

¶9            Scott argues the superior court erred by denying his motion to admit hearsay statements under Arizona Rule of Evidence 807(a), the residual hearsay exception. He claims the court's ruling violated his right to due process. We review the court's ruling on the admissibility of evidence for an abuse of discretion, and related constitutional challenges *de novo*. *See State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).

¶10           Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, and is presumptively inadmissible. *See* Ariz. R. Evid. 801(c), 802. Under the residual hearsay exception, a hearsay statement may be admitted if: "(1) the statement is supported by sufficient

guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Ariz. R. Evid. 807(a). To qualify, the statement "must be so trustworthy that adversarial testing would add little to its reliability." *Idaho v. Wright*, 497 U.S. 805, 806 (1990). As a result, the exception applies "only in rare and exceptional circumstances." *State v. Luzanilla*, 179 Ariz. 391, 397 (1994).

¶11 In determining whether the residual hearsay exception applies, we may consider spontaneity, consistency, knowledge, mental state, motivation to lie, criminal history, and the time and place statements were made. *See State v. Burns*, 237 Ariz. 1, 20, ¶¶ 69-70 (2015); *State v. Cruz*, 218 Ariz. 149, 162, ¶¶ 62-63 (2008); *State v. Valencia*, 186 Ariz. 493, 498 (App. 1996).

¶12 Before and during trial, Scott moved to admit hearsay statements made by Amy's friends and acquaintances, who had either passed away or suffered memory loss. He argued portions of their interview transcripts, along with handwritten notes by an interviewing detective, were admissible under the residual hearsay exception. Scott sought to admit statements regarding Amy's conduct and physical appearance in the days before her murder, her sexual history and orientation, and any suspects that may have been involved in her murder. After hearing argument, the superior court denied the motion.

¶13 All of the relevant statements were made in response to questioning by detectives, generally reducing their likelihood of trustworthiness. *See Burns*, 237 Ariz. at 20, ¶ 70. Most of the statements were speculative, emotionally charged, inconsistent or muddled, and based on second-hand information. And, many of the witnesses admitted to involvement in unrelated criminal activity and issues with substance abuse. To the extent any of the statements met the standard of trustworthiness, the documents containing those statements did not. Although the interview transcripts and notes were likely created by law enforcement in the initial investigation, they do not list the author of the document, the manner of transcription, or any avowals as to their accuracy. Lacking any indicia of reliability, the documents and the statements contained therein lacked the requisite guarantees of trustworthiness. This case did not involve the "rare and exceptional circumstances" in which the residual hearsay exception can be applied. *See Luzanilla*, 179 Ariz. at 397.

¶14 Beyond that, any error in excluding the statements would have been harmless given the overwhelming evidence of Scott's guilt, including a highly improbable explanation for finding Amy's body and DNA evidence linking him to her murder. *See State v. Bible*, 175 Ariz. 549, 590 (1993) (finding error harmless where improper evidentiary ruling had no impact on the jury's guilty verdict).

## II.  Denial of Motion to Dismiss for Pre-Indictment Delay

¶15 Scott next argues the pre-indictment delay violated his due process right and the superior court erred by denying his motion to dismiss. We review the court's ruling on a motion to dismiss for pre-indictment delay for an abuse of discretion. *See State v. Lemming*, 188 Ariz. 459, 460-63 (App. 1997). We review due process claims *de novo*. *See State v. Rosengren*, 199 Ariz. 112, 116, ¶ 9 (App. 2000).

¶16 The primary guarantee against "overly stale criminal charges" is the relevant statute of limitations. *United States v. Ewell*, 383 U.S. 116, 122 (1966). A charge of first-degree murder has no such limitation. *See* A.R.S. § 13-107(A). Due process provides an additional, although limited, protection against unreasonable delay. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977). To prevail on a due process claim, the defendant must show 1) the State intentionally delayed filing charges to harass or gain a tactical advantage over the defendant, and 2) the delay caused the defendant actual prejudice. *See State v. Broughton*, 156 Ariz. 394, 397 (1988). This two-prong test, adopted by our Supreme Court, has remained the method of evaluating the implication of pre-indictment delay on a defendant's right to due process for over 40 years. *See State v. Torres*, 116 Ariz. 377, 378 (1977); *State v. Marks*, 113 Ariz. 71, 74 (1976).

¶17 Before trial, Scott moved to dismiss for pre-indictment delay and argued, in pertinent part, that Arizona's two-prong test unfairly places the burden on defendants to prove intentional delay. Scott asked the superior court to forgo well-established Arizona law and perform a balancing test that shifts the burden to the State. After the State responded in objection, the court issued a minute entry denying the motion. Scott raises the same claim on appeal, arguing Arizona's two-prong test for evaluating pre-indictment delay violates the due process guarantees of the United States and Arizona constitutions.

¶18 Scott asks for a ruling we lack the authority to provide. Since adopting the two-prong test, our Supreme Court has cast no doubt on the constitutionality of that approach in its subsequent decisions. *See State v.*

*Lacy*, 187 Ariz. 340, 346 (1996); *State v. Williams*, 183 Ariz. 368, 379 (1995); *Broughton*, 156 Ariz. at 397. We are bound by those decisions, and any departure falls within "the exclusive purview of that court." *State v. McPherson*, 228 Ariz. 557, 563, ¶ 16 (App. 2012). We have previously rejected a similar request to ignore or overturn the two-prong test and Scott provides no basis for us to deviate from that rationale. *See State v. Romero*, 236 Ariz. 451, 454, ¶ 7 (App. 2014), *vacated in part on other grounds*, 239 Ariz. 6 (2016).

**¶19** Scott concedes that he cannot demonstrate intentional delay under Arizona's two-prong test. Because he has failed to make this showing, we cannot find reversible error and need not address whether the delay caused him prejudice. *See Broughton*, 156 Ariz. at 397. Even so, Scott has not met the heavy burden of proving actual, non-speculative prejudice. *Id.* at 397-98. He claims the loss of witness testimony, either through their death or memory loss, resulted in actual prejudice. Scott has failed to establish such testimony would have been admissible, credible, and beneficial to his defense. *See State v. Dunlap*, 187 Ariz. 441, 451 (App. 1996) (finding loss of witnesses insufficient to establish prejudice without a showing their testimony would have impacted the verdict). On this record, we see no due process violation. The superior court properly denied the motion to dismiss.

**¶20** Lastly, Scott argues the superior court's failure to conduct a hearing or allow time for a reply constituted error. Scott was not, as he contends, deprived of a meaningful opportunity to litigate the issue. His motion adequately preserved the issue on appeal, and nothing from the record suggests the court improperly applied the law. *See State v. Trostle*, 191 Ariz. 4, 22 (1997) ("Trial judges are presumed to know the law and to apply it in making their decisions." (citation omitted)); *see also* Ariz. R. Crim. P. 1.9(d)-(e) (providing courts with the authority to set hearings and waive procedural requirements). We see no error.

## CONCLUSION

**¶21** For the foregoing reasons, we affirm Scott's conviction and resulting sentence.

AMY M. WOOD • Clerk of the Court
FILED:  AA